**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DANIL DENHA, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>BELLRING BRANDS, INC., DARCY HORN DAVENPORT and PAUL RODE,<br><br>    Defendants. | Civ. A. No. 1:26-cv-00575-JSR |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE TRUSTEES OF THE IWA-FOREST INDUSTRY PENSION PLAN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ................................................................................................. 1

II.   SUMMARY OF THE ACTION AND PROCEDURAL BACKGROUND ...................... 2

III.  ARGUMENT ....................................................................................................... 4

      A.   The PSLRA Standard for Appointing Lead Plaintiff ................................................ 4

      B.   IWA-Forest Is the "Most Adequate Plaintiff" under the Exchange Act .................... 5

           1.   IWA-Forest Has Satisfied the PSLRA's Procedural Requirements ................. 6

           2.   IWA-Forest Has the Largest Financial Interest in the Relief Sought by
                the Class ................................................................................................ 6

      C.   IWA-Forest Is Qualified Under Rule 23 ................................................................ 6

           1.   IWA-Forest's Claims Are Typical of the Claims of the Class ......................... 7

           2.   IWA-Forest Will Fairly and Adequately Represent the Class' Interests .......... 8

           3.   This Court Should Approve IWA-Forest's Choice of Counsel ....................... 10

IV.   CONCLUSION .................................................................................................. 10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Christiansen v. Spectrum Pharm., Inc.*,
  No. 22-CV-10292 (VEC), 2026 WL 35317 (S.D.N.Y. Jan. 6, 2026)..........................................8

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)..........................................................................................................9

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*,
  No. 16-CV-03495, 2016 WL 5867497 (S.D.N.Y. Oct. 4, 2016)...........................................7, 10

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992)..........................................................................................................8

*In re Petrobras Sec. Litig.*,
  104 F. Supp. 3d 618 (S.D.N.Y. 2015).......................................................................................9, 10

*In re Razorfish, Inc. Sec. Litig.*,
  143 F. Supp. 2d 304 (S.D.N.Y. 2001)..........................................................................................9

*Indergit v. Rite Aid Corp.*,
  293 F.R.D. 632 (S.D.N.Y. 2013) .................................................................................................8

*Reitan v. China Mobile Games & Entm't Grp., Ltd.*,
  No. 14-cv-4471, 2014 WL 6491433 (S.D.N.Y. Nov. 20, 2014)...................................................9

**Statutes**

15 U.S.C. §78j(b) ..............................................................................................................................1

15 U.S.C. §78t(a) ..............................................................................................................................1

15 U.S.C. §78u-4, *et seq.* .........................................................................................................*passim*

**Rules**

Fed. R. Civ. P. 23 .....................................................................................................................*passim*

**Other Authorities**

H.R. Conf. Rep. No. 104-327 (1995).................................................................................................9

Putative class member The Trustees of the IWA-Forest Industry Pension Plan ("IWA-Forest"), by its counsel, respectfully submits this Memorandum of Law pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for entry of an order: (i) appointing IWA-Forest as Lead Plaintiff in the above-captioned action (the "Action"); (ii) approving IWA-Forest's selection of the law firm of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") to serve as Lead Counsel under 15 U.S.C. § 78u-4(a)(3)(B)(v); and (iii) granting such other and further relief as the Court may deem just and proper.

IWA-Forest is a sophisticated institutional investor that is precisely the type of lead plaintiff that Congress sought to summon and empower when it enacted the PSLRA. IWA-Forest believes that it has the largest financial interest in the outcome of this litigation and is thus presumptively entitled to be appointed Lead Plaintiff and that its choice of counsel should be approved. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

## I.    INTRODUCTION

The Action is a proposed class action brought pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder, against BellRing Brands, Inc. ("BellRing" or the "Company"), Chief Executive Officer Darcy Horn Davenport ("Davenport"), and Chief Financial Officers Paul Rode ("Rode") (herein collectively referred to as the "Defendants"), on behalf of all persons and entities who purchased or otherwise acquired BellRing securities between November 19, 2024 and August 4, 2025, both dates inclusive (the "Class Period").

Pursuant to the PSLRA, this Court must appoint the member or members of the class "most capable of adequately representing the interests of class members" to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). IWA-Forest believes it is entitled to appointment as Lead Plaintiff as

the movant with the largest financial interest that otherwise meets the applicable requirements of Rule 23 of the Federal Rules of Civil Procedure. IWA-Forest also respectfully requests that the Court approve Kaplan Fox as Lead Counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v) ("the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class").

## II.    SUMMARY OF THE ACTION AND PROCEDURAL BACKGROUND

On January 22, 2026, the Action was filed and in accordance with 15 U.S.C. § 78u-4(a)(3)(A)(i) of the PSLRA, notice of the Action was published to class members in *Globe Newswire* (the "Notice") advising purchasers of BellRing securities of the existence of a lawsuit against Defendants and the nature of Defendants' statements, omissions and alleged conduct.[1] The Notice further advised class members of their right to move the Court to be appointed Lead Plaintiff by March 23, 2026.

Accordingly, IWA-Forest now moves this Court to be appointed as Lead Plaintiff.

As alleged in the Action, BellRing develops, markets, and sells "ready-to-drink" (RTD) protein shakes and other protein enriched products. Compl. ¶2.[2] According to the complaint, supply constraints historically had impacted the Company's financial results, with demand often exceeding manufacturing capacity, leaving the Company unable to fully meet demand. *Id.* ¶¶4-5. Due to the imbalance between supply and demand, BellRing's customers had accumulated excess inventory as a safeguard against product shortages that had previously hampered the Company. *Id.* ¶8. However, in 2024, before the start of the class period, BellRing expanded manufacturing

---

[1] A subsequent stockholder derivative action was filed in this District, under the caption *Green v. BellRing Brands, Inc., et. al.*, 1:26-cv-02011. This motion does not seek consolidation of the Action, which asserts direct claims, with the derivative actions because direct and derivative claims involve distinct rights, injuries, and remedies and therefore consolidation would be inappropriate.

[2] "Compl., ¶__" refers to paragraphs of the complaint filed in the Action. ECF No. 1.

capacity, making previous customer shortages a thing of the past, and allowing customers to no longer stockpile BellRing products. *Id.* ¶¶5, 8.

At the close of business on November 18, 2024, the start of the Class Period, the Company issued a press release reporting its results for the fourth quarter of 2024 and full year ended September 30, 2024. *Id.* ¶30. During the subsequent earnings call the next day, November 19, 2024, Davenport and Rode represented net sales growth gains were driven by "organic growth and distribution gains." *Id.* ¶¶34-35. On February 3, 2025, at the close of business, BellRing issued a press release reporting its results for the first quarter of 2025 ended December 31, 2024. *Id.* ¶36. Davenport again repeated the representation that "robust growth" was being driven by "organic growth," "incremental promotional activity," "strong macro tailwinds," and "distribution gains." *Id*. Further, when asked about the competitive landscape of the RTD protein market, Davenport claimed there had not been "a ton of major changes" in the "last several quarters" and that BellRing had a "competitive moat" that protected the Company from competitors. *Id.* ¶42.

The complaint alleges that during the Class Period, BellRing repeatedly represented sales growth across its protein business as organically driven and sustainable, while also reassuring investors about the Company's competitiveness in the market, and the subsequent sales growth prospects for the business. *Id.* ¶7. However, at the same time, the Defendants failed to disclose that (1) sales growth during the Class Period was due to its key customers stockpiling inventory, (2) the erosion of the Company's market share as competition intensified, and (3) as a result, BellRing's positive statements about BellRing's sales growth, operations, and prospects were false and misleading. *Id* ¶¶8, 43.

According to the complaint, on May 5, 2025, the truth was partially revealed when BellRing disclosed that "several key retailers lowered their weeks of supply on hand, which is

3

expected to be a mid-single-digit headwind to our third quarter growth." *Id.* ¶44. The next day, on the Company's earnings call, Davenport disclosed that customers had previously "hoard[ed] inventory to make sure that they didn't run out of stock on shelf" and "now felt comfortable about bringing them down." *Id.* ¶45. Davenport ended, "we thought this could happen." *Id.*

Following the news, BellRing's stock fell $14.88 per share, or 19%, to close at $63.55 per share on May 6, 2025. *Id.* ¶46.

The truth was fully revealed on August 4, 2025, at the close of business when BellRing disclosed a narrowing of its sales guidance. *Id.* ¶11. The following day, on the Company's earnings call, Davenport blamed the disappointing sales outlook on competitive headwinds. *Id.* ¶12. Noting that increased competition was "not surprising to see," and that BellRing was aware of competitors gaining access to additional inventory space, increasing the competitive pressure in the marketplace. *Id.*

Following the August 4, 2025 news, BellRing's stock fell $17.46 per share, or nearly 33%, to close at $36.18 per share on August 5, 2025. *Id.* ¶13.

## III.    ARGUMENT

### A.    The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA sets forth the procedure for the selection of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1), 78u-4(3)(B)(i). Specifically, within 20 days after the date on which a class action is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –

> (I)    of the pendency of the action, the claims asserted therein, and the purported class period; and

4

> (II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Further, the PSLRA directs the Court to consider any motions by plaintiffs or purported class members to serve as lead plaintiff in response to any such notice within 90 days after the date of publication of the notice, or as soon as practicable after the Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims. 15 U.S.C. § 78u-4(a)(3)(B).

Under the relevant sections of the Exchange Act, the Court "shall" appoint the "most adequate plaintiff," and is to presume that plaintiff is the person which:

> (aa)    has either filed the complaint or made a motion in response to a notice . . .;
> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### B.    IWA-Forest Is the "Most Adequate Plaintiff" under the Exchange Act

IWA-Forest respectfully submits that it is the "most adequate plaintiff" because it has complied with the PSLRA procedural requirements, holds the largest financial interest of any movant, and satisfies Rule 23's typicality and adequacy requirements. In addition, IWA-Forest has duly signed and filed a certification stating that it is willing to serve as the representative party on behalf of the class. *See* Declaration of Jeffrey P. Campisi in Support of the Motion of The Trustees of the IWA-Forest Industry Pension Plan for Appointment as Lead Plaintiff and Approval of its Selection of Lead Counsel ("Campisi Decl."), dated March 23, 2026, Ex. B attached thereto. Finally, IWA-Forest has selected and retained counsel experienced in the prosecution of securities

5

class actions to represent the class. *See id.*, Ex. D (Kaplan Fox Firm Resume). Accordingly, IWA-Forest satisfies the PSLRA's requirements and, therefore, should be appointed Lead Plaintiff.

### 1. IWA-Forest Has Satisfied the PSLRA's Procedural Requirements

The Action was filed on January 22, 2026, and Notice was published over the *Globe Newswire* national wire service the same day. *See id.*, Ex. A. Accordingly, the time period in which class members may move to be appointed lead plaintiff in this case expires on March 23, 2026. *See* 15 U.S.C. § 78u-4(a)(3)(A). Pursuant to the PSLRA's provisions, and within the requisite time frame after publication of the required notice, IWA-Forest timely moved this Court to be appointed lead plaintiff on behalf of all members of the class.

### 2. IWA-Forest Has the Largest Financial Interest in the Relief Sought by the Class

Under the relevant sections of the Exchange Act, a rebuttable presumption exists whereby the plaintiff with the largest financial interest in the litigation and who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure is presumed to be the most adequate plaintiff to lead the action. 15 U.S.C. § 78u-4(a)(3)(B)(iii). Here, IWA-Forest suffered substantial losses of $461,370 as a result of purchasing 17,974 total and net shares of BellRing common stock at artificially inflated prices during the Class Period with net expenditures of $1,119,398. *See* Campisi Decl., Exs. B and C. IWA-Forest is not aware of any other movant with a larger financial interest and believes it has the largest financial interest of any lead plaintiff movant. Therefore, IWA-Forest believes it is presumptively entitled to appointment as the Lead Plaintiff.

### C. IWA-Forest Is Qualified Under Rule 23

The PSLRA provides that the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule

23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representatives. *See In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16-CV-03495, 2016 WL 5867497, at *4 (S.D.N.Y. Oct. 4, 2016) ("For the purposes of appointment as lead plaintiff pursuant to the PSLRA, however, 'the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.'") (citation omitted). Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. As detailed below, IWA-Forest satisfies the typicality and adequacy requirements of Rule 23(a), thereby justifying its appointment as Lead Plaintiff for the Action.

### 1. IWA-Forest's Claims Are Typical of the Claims of the Class

The typicality requirement of Rule 23(a) is satisfied when (1) the claims of the proposed lead plaintiff arise from the same course of conduct that gives rise to the other purported class members' claims, (2) the claims are based on the same legal theory, and (3) the purported class members and proposed lead plaintiff were injured by the same conduct. *See, e.g.*, *In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 2016 WL 5867497, at *5 ("The typicality requirement is satisfied if each class member's claim 'arises from the same course of events, and each class

7

member makes similar legal arguments to prove the defendant's liability.'") (internal citations omitted).

The claims asserted by IWA-Forest are based on the same legal theory and arise out of the same course of events as the other purported class members' claims. IWA-Forest purchased shares of BellRing common stock, as did each member of the proposed class, at prices artificially inflated by Defendants' false and misleading statements and was damaged thereby. *Christiansen v. Spectrum Pharm., Inc.*, No. 22-CV-10292 (VEC), 2026 WL 35317, *2 (S.D.N.Y. Jan. 6, 2026) (finding the typicality requirement met where movants' claims and injuries arose from the same conduct from which the other class members' claims and injuries arose). Thus, IWA-Forest satisfies the typicality requirement of Rule 23(a).

### 2. IWA-Forest Will Fairly and Adequately Represent the Class' Interests

Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the representative party must "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). A lead plaintiff is adequate where it has retained counsel that is "'qualified, experienced and generally able' to conduct the litigation" and does not have interests that are "antagonistic" to the class that it seeks to represent. *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 654 (S.D.N.Y. 2013) (citing *In re Drexel*, 960 F.2d 285, 291 (2d Cir. 1992)). Here, IWA-Forest's interests are clearly aligned with the members of the proposed class, and there is no evidence of any antagonism between IWA-Forest's interests and those of the class. As detailed above, IWA-Forest's claims raise similar questions of law and fact as claims of the members of the class, and IWA-Forest's claims are typical of the members of the class.

Further, IWA-Forest has demonstrated its adequacy and willingness to serve as and assume the responsibilities of a lead plaintiff. *See* Campisi Decl., Ex. B. Having suffered substantial losses, IWA-Forest will be a zealous advocate on behalf of the class. Furthermore, IWA-Forest is a

8

sophisticated institutional investor that is precisely the type of lead plaintiff that Congress sought to summon and empower when it enacted the PSLRA. *See In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 625 (S.D.N.Y. 2015) (Rakoff, J.) ("[T]he Court is cognizant of the PSLRA's 'statutory preference for institutional lead plaintiffs.'"). As Congress noted in its PSLRA Statement of Managers Report, the PSLRA was designed "to increase the likelihood that institutional investors will serve as lead plaintiff[]," in part, because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." *In re Cendant Corp. Litig.*, 264 F.3d 201, 244, 264 (3d Cir. 2001) (quoting H.R. Conf. Rep. 104-327, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 737)); *see also Reitan v. China Mobile Games & Entm't Grp., Ltd.*, No. 14-cv-4471, 2014 WL 6491433, at *4 (S.D.N.Y. Nov. 20, 2014) (recognizing that "many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs," and collecting cases). An institutional investor's "expertise in the securities market and real financial interests in the integrity of the market" makes it best suited to further one of the PSLRA's primary purposes, to prevent lawyer driven litigation. *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308-9 (S.D.N.Y. 2001) (Rakoff, J.) (internal citations omitted). IWA-Forest's sophistication and the size of its financial loss help ensure that lead plaintiffs are "the true drivers of the litigation," not lawyers. *Petrobras,* at 622.

Finally, IWA-Forest has selected Kaplan Fox—counsel highly experienced in prosecuting securities class actions—to represent it. *See* Campisi Decl., Ex. D. Thus, the close alignment of interests between IWA-Forest and other class members, and IWA-Forest's strong desire to prosecute the Action on behalf of the class, provide ample reason to grant IWA-Forest's motion

for appointment as Lead Plaintiff in the Action. Accordingly, IWA-Forest satisfies the prerequisites for appointment as Lead Plaintiff pursuant to the Exchange Act.

### 3.    This Court Should Approve IWA-Forest's Choice of Counsel

The Exchange Act vests authority in the lead plaintiff to select and retain lead counsel, subject only to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 2016 WL 5867497, at *5 ("There is a 'strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection.'") (citations omitted). IWA-Forest has retained Kaplan Fox to file moving papers on behalf of IWA-Forest seeking appointment as Lead Plaintiff and to serve as lead counsel to pursue this litigation on behalf of itself and the class. Kaplan Fox possesses extensive experience in the area of securities litigation and has successfully prosecuted numerous securities class actions on behalf of injured investors. *See* Campisi Decl., Ex. D. Further, Kaplan Fox has extensive experience in this District; notably settling claims in an individual opt-out action stemming from *In re Petrobras Securities Litigation*, No. 1:14-CV-09662-JSR (S.D.N.Y), and securing a settlement of $2.425 billion in *In re Bank of America Corp., Securities, Derivative, and ERISA Litigation*, No. 1:09-md-020508-PKC (S.D.N.Y.), one of the largest securities class action settlements ever. Thus, the Court may be assured that, in the event the instant motion is granted, the members of the class will receive the highest caliber of legal representation available.

## IV.    CONCLUSION

For all of the foregoing reasons, IWA-Forest respectfully requests that the Court: (1) appoint IWA-Forest as Lead Plaintiff; (2) approve IWA-Forest's selection of Kaplan Fox as Lead Counsel; and (3) grant such other relief as the Court may deem just and proper.

Dated: March 23, 2026

Respectfully submitted,

*/s/ Jeffrey P. Campisi*
Jeffrey P. Campisi
Frederic S. Fox
Donald R. Hall
Pamela A. Mayer
**KAPLAN FOX & KILSHEIMER LLP**
800 Third Avenue, 38th Floor
New York, NY 10022
T: (212) 687-1980
F: (212) 687-7714
jcampisi@kaplanfox.com
ffox@kaplanfox.com
dhall@kaplanfox.com
pmayer@kaplanfox.com

*Attorneys for Movant The Trustees of the
IWA-Forest Industry Pension Plan and
Proposed Lead Counsel for the Class*

11

**CERTIFICATE OF COMPLIANCE**

I certify that this memorandum of law contains 3,109 words and complies with the type-volume limitation of Local Civil Rule 7.1(c) of the Local Rules of United States District Courts for the Southern and Eastern District of New York, dated January 2, 2026, and the Individual Practices in Civil Cases of the Hon. Jed S. Rakoff, United States District Judge. I also certify that this brief complies with the typeface and type style requirements of Local Civil Rule 7.1(b)(1)(2)(3).

/s/ Jeffrey P. Campisi
Jeffrey P. Campisi


**CERTIFICATE OF SERVICE**

I, Jeffrey P. Campisi, hereby certify that, on March 23, 2026, I caused the foregoing to be served on all counsel of record by filing the same with the Court using the CM\ECF system which will send electronic notices of the filing to all counsel of record.

/s/ Jeffrey P. Campisi
Jeffrey P. Campisi

12