**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DANIL DENHA, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:26-cv-00575-JSR |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | |
| BELLRING BRANDS, INC., DARCY HORN DAVENPORT, and PAUL RODE, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY CONSTRUCTION LABORERS PENSION TRUST OF GREATER ST. LOUIS FOR APPOINTMENT AS <u>LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................................1

FACTUAL BACKGROUND.................................................................................................2

ARGUMENT.........................................................................................................................5

    I.      THE PENSION TRUST IS THE PRESUMPTIVE LEAD PLAINTIFF
           AND SHOULD BE APPOINTED LEAD PLAINTIFF..........................................5

           A.     The Pension Trust Filed a Timely Motion...................................................6

           B.     The Pension Trust Has the Largest Financial Interest in the Relief
                 Sought by the Class....................................................................................6

           C.     The Pension Trust Satisfies Rule 23 ..........................................................7

    II.     THE PENSION TRUST'S SELECTION OF CO-LEAD COUNSEL
           SHOULD BE APPROVED ..................................................................................8

CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Constance Sczesny Tr. v. KPMG LLP*,
    223 F.R.D. 319 (S.D.N.Y. 2004) ...............................................................................................8

*In re NYSE Specialists Sec. Litig.*,
    240 F.R.D. 128 (S.D.N.Y. 2007) ...............................................................................................5

*Peters v. Jinkosolar Holding Co., Ltd.*,
    2012 WL 946875 (S.D.N.Y. Mar. 19, 2012) .........................................................................6, 7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) ............................................................................................1, 8

*Taft v. Ackermans*,
    2003 WL 402789 (S.D.N.Y. Feb. 20, 2003) ............................................................................8

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    95 F. Supp. 3d 607 (S.D.N.Y. 2015)..........................................................................................9

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y. 2009) ...................................................................................5, 6, 7, 8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008).......................................................................................8

**Statutes, Rules & Regulations**

United States Statutes
    15 U.S.C. §78u-4(a)(1) .............................................................................................................5
    15 U.S.C. §78u-4(a)(3)(A)(i)....................................................................................................6
    15 U.S.C. §78u-4(a)(3)(B) ........................................................................................................1
    15 U.S.C. §78u-4(a)(3)(B)(i) ....................................................................................................1
    15 U.S.C. §78u-4(a)(3)(B)(iii) ..................................................................................................7
    15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc) ............................................................................1, 5
    15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb) .......................................................................................7
    15 U.S.C. §78u-4(a)(3)(B)(v) ...................................................................................................9

Code of Federal Regulations
    17 C.F.R. §240.10b-5.................................................................................................................1

Lead Plaintiff movant, the Construction Laborers Pension Trust of Greater St. Louis ("Pension Trust" or "Movant"), on behalf of itself and all others similarly situated, respectfully submits this Memorandum of Law in support of its Motion to: (1) appoint the Pension Trust as Lead Plaintiff in the above-captioned securities class action; (2) approve the Pension Trust's selection of Scott+Scott Attorneys at Law LLP ("Scott+Scott") as Lead Counsel for the putative Class; and (3) grant such other and further relief as the Court may deem just and proper.[1]

## PRELIMINARY STATEMENT

Presently pending before the Court is a securities class action brought on behalf of persons and entities that purchased or otherwise acquired BellRing Brands, Inc. ("BellRing" or the "Company") securities between November 19, 2024 and August 4, 2025, inclusive (the "Class Period"), and were damaged thereby.  The Action alleges violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5.

The Private Securities Litigation Reform Act of 1995, as amended, 15 U.S.C. §78u-4(a)(3)(B) ("PSLRA"), provides that a court must appoint as lead plaintiff the "most adequate plaintiff."  15 U.S.C. §78u-4(a)(3)(B)(i); *see, e.g.*, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 403 (S.D.N.Y. 2004).  The Pension Trust is the most adequate Plaintiff because it has timely moved to be Lead Plaintiff, has the largest financial interest in the litigation ($152,325.42 in recoverable losses), and satisfies the representative requirements set forth in Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc).

---

[1]    Defined terms have the same definitions as in the complaint filed in the above-captioned action (the "Action") on January 22, 2026 (the "Complaint").  ECF No. 1.  Unless otherwise noted, all "¶" and "¶¶" citations refer to the Complaint.

For the reasons summarized herein and discussed more fully below, the Pension Trust's Motion should be approved in its entirety.

## FACTUAL BACKGROUND

This is a federal securities class action on behalf of all persons and entities that purchased or otherwise acquired BellRing securities during the Class Period against BellRing and certain of its officers and executives. ¶1. The Action asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, against: (i) BellRing; (ii) the Company's Chief Executive Officer Darcy Horn Davenport ("Davenport"); and (iii) the Company's Chief Financial Officer Paul Rode ("Rode"). *Id.*

BellRing develops, markets, and sells "convenient nutrition" products such as ready-to-drink ("RTD") protein shakes, powders, bars, and other protein enriched food products, primarily under the brand name Premier Protein. ¶2. The Company relies on third-party manufacturers to make its products, which it sells to consumers through club stores, grocery stores, pharmacies, mass retailers, e-commerce, online and specialty retailers, and convenience stores. *Id.*

BellRing recognizes revenue when control of its products passes to the customer, which typically occurs upon shipment or delivery in accordance with the applicable customer arrangement. ¶3. In recent years, the convenient nutrition market has grown significantly as consumers increasingly seek simple, on-the-go ways to add protein and incorporate nutrition into their daily routines. ¶4. Products like RTD shakes, once primarily targeted at fitness enthusiasts, have become more mainstream, appealing to a broader consumer base. As a result, these products are now widely available across club, grocery, mass, and online retailers, driving heightened competition within the category. *Id.* BellRing's competitors include a mix of established brands, small emerging brands, and retailer-owned brands. *Id.*

Previously, supply constraints heavily impacted BellRing's financial results. ¶5. Demand exceeded manufacturing capacity, often leaving the Company unable to fully meet retailer demand. *Id.* However, in 2024, prior to the start of the Class Period, BellRing expanded manufacturing capacity by adding more third-party manufacturing partners. *Id.* According to Defendants, the new manufacturing capacity allowed the Company to implement certain "demand drivers" for the first time in years. *Id.*

This case arises from Defendants' misrepresentations regarding the strength, sustainability, and drivers of BellRing's sales growth, as well as the impact of competition on the demand for the Company's products. ¶6. During the Class Period, Defendants represented that sales growth reflected increased end-consumer demand, attributing results to "organic growth," new "demand drivers," "distribution gains," "incremental promotional activity," and "[s]trong macro tailwinds around protein" which was "driving robust long-term growth[.]" ¶7. At the same time, Defendants downplayed the impact of competition on demand for its products, insisting that the Company was not experiencing any significant changes in competition, and that in the RTD category particularly, BellRing possessed a "competitive moat," given that "the ready-to-drink category is just highly complex" and the products are "hard to formulate." *Id.*

In truth, BellRing's reported sales during the Class Period were due to its key customers stockpiling inventory, which concealed the erosion of the Company's market share as competition intensified, and did not reflect increased end-consumer demand or brand momentum. ¶8. Customers had accumulated excess inventory as a safeguard against product shortages that had previously constrained BellRing's supply. *Id.* Once customers gained confidence that product shortages were a thing of the past, they promptly reduced their inventory by selling through

3

existing products and cutting back on new orders. *Id.* Following the destocking, the Company further admitted that competitive pressures were materially weakening demand. *Id.*

On May 6, 2025, Defendant Rode revealed that "several key retailers lowered their weeks of supply on hand, which is expected to be a mid-single-digit headwind to our third quarter growth," adding "[w]e now expect Q3 net sales growth of low single digits[.]" ¶9. Defendant Davenport revealed that retailers had been "hoarding inventory to make sure that they didn't run out of stock on shelf" and "protecting themselves coming out of capacity constraints." *Id.* She further revealed that since there had been "several quarters of high in-stock rates" customers "felt comfortable about bringing [inventory] down. We thought this could happen." *Id.* Davenport then assured investors that demand for BellRing's products remained strong despite the sales growth headwinds, stating, there is "no softness, no concern around consumption," without any hint of competition. *Id.* On this news, the price of BellRing stock fell $14.88 per share, or 19%, from a closing price of $78.43 per share on May 5, 2025, to a closing price of $63.55 per share on May 6, 2025, on unusually heavy trading volume. ¶10.

Then, on August 4, 2025, BellRing reported its 3Q 2025 financial results and "narrowed its fiscal year 2025 outlook for net sales," a move the market viewed as a negative signal about the Company's sales momentum. ¶11. The next day, during the Company's August 5, 2025 earnings call to discuss the quarterly financial results, Defendant Davenport attributed the disappointing new sales outlook to competitive headwinds. ¶12. First, she noted, "it is not surprising to see new protein RTDs enter[ed] the [convenient nutrition] category, especially in its biggest channel cloud." *Id.* When Jefferies LLC analyst Kaumil S. Gajrawala asked, "given all of the statistics and all the things that you talked about [such as] the momentum that you have . . . why [are you] narrowing [the guidance] as opposed to maybe pushing towards the high end[,]" Davenport

4

revealed that although BellRing had secured new inventory space with a large club retailer, "several other competitors gained . . . space as well. So we're assuming this increases some competitive pressure in club[.]" *Id.* On this news, the price of BellRing stock fell $17.46 per share, or nearly 33%, from a closing price of $53.64 per share on August 4, 2025, to a closing price of $36.18 per share on August 5, 2025, on unusually heavy trading volume. ¶13.

**ARGUMENT**

**I. THE PENSION TRUST IS THE PRESUMPTIVE LEAD PLAINTIFF AND SHOULD BE APPOINTED LEAD PLAINTIFF**

The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *id.* at (a)(3)(B). First, the plaintiff who files the action must publish a notice to the class within 20 days of filing the action informing class members of their right to file a motion for appointment as lead plaintiff (the "Early Notice"). *Id.* at (a)(3)(A)(i). Second, within 60 days after publication of the Early Notice, any member of the proposed class may apply to the court to be appointed as lead plaintiff. *Id.* at (a)(3)(A)(i)(II)-(B)(iii)(I).

Finally, "the Court is required to appoint 'the most adequate plaintiff' as lead plaintiff." *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 141 (S.D.N.Y. 2007) (quoting 15 U.S.C. §78u-4(a)(3)(B)(i)). Under this Exchange Act provision, "the 'most adequate plaintiff' [is] determined by a two-step competitive process." *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 343 (S.D.N.Y. 2009). First, the Exchange Act provides that the court is to presume the "most adequate plaintiff" to be the class member who: (a) "has either filed [a] complaint or made a motion [for lead plaintiff] in response to a notice"; (b) "has the largest financial interest in the relief sought"; and (c) "otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc); *see*

5

*also Tronox*, 262 F.R.D. at 343-44.  The Rule 23 element of the presumption necessitates only a "preliminary showing that [the movant] satisfies the typicality and adequacy requirements of Rule 23."  *Id.* at 344.  Second, so long as the presumption is not rebutted, the "most adequate plaintiff" shall be appointed the lead plaintiff.  *Id.* at 345.  As demonstrated below, the Pension Trust meets these requirements and should be appointed to serve as Lead Plaintiff.

### A.    The Pension Trust Filed a Timely Motion

On January 22, 2026, the same day this Action was filed, a notice of pendency of the Action was published on *ACCESS Newswire*, a national newswire service.  *See* Declaration of Thomas L. Laughlin, IV ("Laughlin Decl."), Ex. A.  The requirements of 15 U.S.C. §78u-4(a)(3)(A)(i) have, therefore, been met.  The notice states that those wishing to serve as Lead Plaintiff "60 days from the date of the publication of this notice . . . [to] move the Court to serve as Lead Plaintiff."  *See id.*

The Pension Trust's motion for appointment as Lead Plaintiff is therefore timely filed.  Moreover, the Pension Trust has submitted a certification stating its willingness to serve as a representative party on behalf of the Class and provided its Class Period transactions.  *See* Laughlin Decl., Ex. B.

### B.    The Pension Trust Has the Largest Financial Interest in the Relief Sought by the Class

To its knowledge, the Pension Trust is the Lead Plaintiff movant with the largest financial interest in the relief sought by the Class.

> Courts in this District generally look at the following factors to determine financial interest: (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period . . . ; (3) the net funds expended during the class period . . . ; and (4) the approximate losses suffered.

*Peters v. Jinkosolar Holding Co., Ltd.*, 2012 WL 946875, at *5 (S.D.N.Y. Mar. 19, 2012) (citing *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007)).  "It is well settled that '[f]inancial loss,

the last factor, is the most important element of the test.'" *Id.* (citing *Varghese v. China Shenghuo*

*Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008)).

As evidenced by its PSLRA certification and the charts detailing the transactions and

losses, the Pension Trust purchased BellRing securities during the Class Period and suffered losses

as a result of Defendants' misconduct.  *See* Laughlin Decl., Exs. B & C.  Specifically, the Pension

Trust suffered losses of approximately $152,325.  Laughlin Decl., Ex. C.

The Pension Trust thus has a significant financial interest in this case.  Moreover, the

Pension Trust is unaware of any other movant that has sustained greater financial losses in

connection with its BellRing transactions during the Class Period.  Therefore, the Pension Trust

has the "largest financial interest in the relief sought by the class."    15 U.S.C. §78u-

4(a)(3)(B)(iii)(I)(bb).

### C.    The Pension Trust Satisfies Rule 23

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii), in addition to possessing the largest financial

interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the

requirements of Rule 23 of the Federal Rules of Civil Procedure."  *Id.* at (a)(3)(B)(iii)(I)(cc).  Of

the Rule 23 prerequisites, only two—typicality and adequacy—directly address the personal

characteristics of the lead plaintiff movant.  Consequently, in deciding a motion to appoint lead

plaintiff, the Court need only make findings as to the typicality and adequacy of the proposed lead

plaintiff and, at this stage, those findings need only be "preliminary."  *Tronox*, 262 F.R.D. at 344.

The Pension Trust easily makes this preliminary showing.

"Typicality requires that the claims of the class representatives be typical of those of the

class, and is satisfied when each class member's claim arises from the same course of events, and

each class member makes similar legal arguments to prove the defendant's liability."  *Id.* (citation

omitted).  Here, the claims asserted are typical of the claims of the other members of the putative

Class because, like all other Class members, the Pension Trust: (a) purchased BellRing securities during the Class Period; (b) was adversely affected by Defendants' allegedly false and misleading statements and omissions; and (c) suffered damages as a result thereof.  Since the Pension Trust's claims are based on the same legal theories and arise from the same event, practice, or course of conduct that gives rise to the claims of other Class members, typicality is satisfied.  *See Varghese*, 589 F. Supp. 2d at 397; *Taft v. Ackermans*, 2003 WL 402789, at *3 (S.D.N.Y. Feb. 20, 2003).

A plaintiff is an adequate class representative when they possess common interests and an absence of conflict with fellow class members and the plaintiff's attorneys are qualified, experienced, and vigorously able to conduct the litigation.  *See Tronox*, 262 F.R.D. at 343.  The Pension Trust is adequate to serve as Class representative in the instant litigation because its interests are aligned with the interests of the putative Class.  The Pension Trust, like all other members of the Class, suffered losses as a result of Defendants' alleged misstatements.  The Pension Trust will, therefore, benefit from the same relief as other Class members.  Finally, the Pension Trust has demonstrated that it is an adequate representative by retaining competent and experienced counsel.  *See LaBranche*, 229 F.R.D. at 413 (considering qualifications of proposed lead counsel in evaluating adequacy); *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004) (same).  As shown below, Scott+Scott is highly qualified, experienced, and able to conduct this complex litigation in a professional manner.  Accordingly, the Pension Trust has made a *prima facie* showing that it satisfies all of the requirements of Rule 23 for the purposes of this motion.

## II.    THE PENSION TRUST'S SELECTION OF CO-LEAD COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  In making this determination, a court

8

should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class[.]" *Id.* at (B)(iii)(II)(aa). "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel." *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015).

The Pension Trust has selected the law firm of Scott+Scott to represent the Class. Scott+Scott has substantial experience in the prosecution of securities fraud class actions and possesses the necessary resources to efficiently conduct this litigation. *See* Laughlin Decl., Ex. D. Specifically, Scott+Scott has served as lead or co-lead counsel in many high-profile class actions and recovered hundreds of millions of dollars for victims of corporate fraud.[2] Also, Scott+Scott currently serves as lead or co-lead counsel in numerous securities class actions pending in several U.S. District Courts.[3]

---

[2] Recoveries obtained by Scott+Scott, acting as lead or co-lead counsel, include: *Okla. Firefighters Pension & Ret. Sys. v. Newell Brands Inc.,* HUD-L-003492-1 (Hudson Cnty. N.J. Super. Ct. NJ) ($102.5 million); *Weston v. RCS Cap. Corp.*, No. 1:14-cv-10136 (S.D.N.Y.) ($31 million); *Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of Am.*, *N.A.*, No. 1:12-cv-02865 (S.D.N.Y.) ($69 million); *Irvine v. ImClone Sys.*, *Inc.*, No. 1:02-cv-00109 (S.D.N.Y.) ($75 million); *In re Micro Focus Int'l plc Sec. Litig.*, Lead Case No. 18-cv-01549 (Cal. Super. Ct. San Mateo Cnty.) ($107.5 million); *In re SanDisk LLC Sec. Litig.*, No. 3:15-cv-01455 (N.D. Cal.) ($50 million); *In re Priceline.com Inc. Sec. Litig.*, No. 3:00-cv-01844 (D. Conn.) ($80 million); *Thurber v. Mattel, Inc.*, No. 2:99-cv-10368 (C.D. Cal.) ($122 million); *In re Emulex Corp. Sec. Litig.*, No. 8:01-cv-00219 (C.D. Cal.) ($39 million); *In re Sprint Sec. Litig.*, No. 00-230077 (Mo. Cir. Ct., Jackson Cnty.) ($50 million); *In re Nw. Corp. Sec. Litig.*, No. 4:03-cv-04049 (D.S.D.) ($61 million); *Schnall v. Annuity & Life Re (Holdings) Ltd.*, No. 3:02-cv-02133 (D. Conn.) ($27 million); *In re Wash. Mut. Mortg. Backed Sec. Litig.*, No. 2:09-cv-00037 (W.D. Wash.) ($26 million); *In re Conn's, Inc. Sec. Litig.*, No. 4:14-cv-00548 (S.D. Tex.) ($22.5 million); *Abadilla v. Precigen, Inc.*, No. 5:20-cv-06936 (N.D. Cal.) ($13 million).

[3] *See, e.g.*, Current Lead Counsel Appointments: *Severt v. UiPath, Inc.*, No. 1:23-cv-07908 (S.D.N.Y.); *Giraudon v. Innovative Indus. Props., Inc.*, No. 1:25-cv-00182 (D. Md.); *White v. Brooge Energy Ltd.*, No. 2:24-cv-00959 (C.D. Cal.); *Rondini v. Kyverna Therapeutics, Inc.*, No. 5:24-cv-08869 (N.D. Cal.); *City of Southfield Fire & Police Ret. Sys. v. Hayward Holdings, Inc.*, 2:23-cv-04146 (D.N.J.); *Sundaram v. Freshworks, Inc.*, No. 3:22-cv-06750 (N.D. Cal.); *City of Birmingham Relief & Ret. Sys. v. Acadia Pharms. Inc.*, No. 3:21-cv-00762 (S.D. Cal.); *Golubowski v. Robinhood Mkts., Inc.*, No. 3:21-cv-09767 (N.D. Cal.); *Jewik v. TransMedics Group, Inc.*, No. 1:25-cv-10385 (D. Mass.).

In light of the foregoing, the Court should approve the Pension Trust's selection of Scott+Scott as Lead Counsel. The Court can be assured that by approving the Pension Trust's choice of Lead Counsel, the putative Class will receive the highest caliber of representation.

## CONCLUSION

For all the foregoing reasons, Movant respectfully requests that the Court: (1) appoint the Pension Trust as Lead Plaintiff on behalf of the Class; (2) approve the Pension Trust's selection of counsel, Scott+Scott, as Lead Counsel; and (3) grant such other and further relief as the Court may deem just and proper.

DATED: March 23, 2026                     **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*/s/ Thomas L. Laughlin, IV*
Thomas L. Laughlin, IV
Mandeep S. Minhas
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
tlaughlin@scott-scott.com
mminhas@scott-scott.com

*Counsel for Lead Plaintiff Movant*

10

**CERTIFICATE OF WORD COUNT COMPLIANCE**

I, Thomas L. Laughlin, IV, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Rule 7.1(c) that this Memorandum of Law was prepared using Microsoft Word, and the document contains 3057 words as calculated by the application's word counting function, excluding the parts of the document exempted by Local Civil Rules 7.1(c).

I certify under the penalty of perjury the forgoing statements are true and correct.  Executed on March 23, 2026, in New York, NY.

_____
Thomas L. Laughlin, IV

1