UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

DANIL DENHA, Individually and on Behalf   :   Civil Action No. 1:26-cv-00575-JSR
of All Others Similarly Situated,         :
                                          :   CLASS ACTION
                        Plaintiff,        :
                                          :   MEMORANDUM OF LAW IN SUPPORT
                                          :   OF MOTION FOR APPOINTMENT AS
        vs.                               :   LEAD PLAINTIFF AND SELECTION OF
                                          :   LEAD COUNSEL
BELLRING BRANDS, INC., DARCY HORN         :
DAVENPORT, and PAUL RODE,                 :
                                          :
                        Defendants.       :
                                          :
---------------------------------------------------------------- x

4904-7843-0361

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..............................................................................................................1

II.   FACTUAL BACKGROUND ...........................................................................................1

III.  ARGUMENT ....................................................................................................................3

    A.    INPRS Should Be Appointed Lead Plaintiff ........................................................3

        1.    INPRS' Motion Is Timely ...........................................................................3

        2.    INPRS Has a Substantial Financial Interest in the Relief Sought by the Class ....................................................................................................4

        3.    INPRS Is Typical and Adequate of the Purported Class ...........................4

    B.    The Court Should Approve INPRS' Selection of Counsel ....................................6

IV.   CONCLUSION .................................................................................................................8

4904-7843-0361

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Dicker v. TuSimple Holdings Inc.*,
No. 3:22-cv-01300 (S.D. Cal.)................................................................................................6

*HsingChing Hsu v. Puma Biotechnology, Inc.*,
No. 8:15-cv-00865-AG (C.D. Cal.) .......................................................................................7

*In re Am. Realty Cap. Props., Inc. Litig.*,
No. 1:15-mc-00040-AKH (S.D.N.Y.) ....................................................................................7

*In re Cardinal Health, Inc. Sec. Litig.*,
No. 2:04-cv-00575-ALM (S.D. Ohio) ....................................................................................7

*In re Enron Corp. Sec. Litig.*,
No. 4:01-cv-03624 (S.D. Tex.) ...............................................................................................7

*In re eSpeed, Inc. Sec. Litig.*,
232 F.R.D. 95 (S.D.N.Y. 2005) .............................................................................................5

*In re HealthSouth Corp. Sec. Litig.*,
No. 2:03-cv-01500-KOB-TMP (N.D. Ala.)............................................................................8

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
No. 1:01-cv-01451-REB-KLM (D. Colo.) .............................................................................7

*In re UnitedHealth Grp. Inc. Sec. Litig.*,
No. 0:06-cv-01691-JMR-FLN (D. Minn.)..............................................................................7

*Karinski v. Stamps.com, Inc.*,
No. 2:19-cv-01828 (C.D. Cal.) ..............................................................................................6

*Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*,
No. 1:02-cv-05893 (N.D. Ill.).................................................................................................7

*Malasky v. IAC/Interactivecorp*,
2004 WL 2980085 (S.D.N.Y. Dec. 21, 2004) ........................................................................5

*Nayani v. LifeStance Health Grp., Inc.*,
No. 1:22-cv-06833-JSR (S.D.N.Y.).........................................................................................6

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
No. 1:08-cv-10783-LAP (S.D.N.Y.).........................................................................................7

4904-7843-0361

**Page**

*Roofers Loc. No. 149 Pension Fund v. Amgen Inc.*,
  2023 WL 4406286 (S.D.N.Y. July 7, 2023) ........................................................4, 5

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
  §78j(b)............................................................................................................1
  §78t(a)............................................................................................................1
  §78u-4(a)(1) ...................................................................................................3
  §78u-4(a)(3)(A)(i)...........................................................................................3
  §78u-4(a)(3)(B)(i) .......................................................................................1, 3
  §78u-4(a)(3)(B)(ii)..........................................................................................1
  §78u-4(a)(3)(B)(iii).........................................................................................1
  §78u-4(a)(3)(B)(iii)(I).....................................................................................3
  §78u-4(a)(3)(B)(iii)(I)(cc)...............................................................................4
  §78u-4(a)(3)(B)(v)......................................................................................1, 6

17 Code of Federal Regulations
  §240.10b-5 .....................................................................................................1

Federal Rules of Civil Procedure
  Rule 23 ...................................................................................................3, 4, 5

**LEGISLATIVE HISTORY**

H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679........................5

4904-7843-0361

## I.   INTRODUCTION

The above-captioned securities class action lawsuit is brought on behalf of purchasers or acquirers of BellRing Brands, Inc. ("BellRing" or the "Company") securities between November 19, 2024 and August 4, 2025 (the "Class Period"), seeking to recover damages caused by defendants' alleged violations of the federal securities laws and pursuing remedies under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

In securities class actions like this one, the Private Securities Litigation Reform Act of 1995 ("PSLRA") states that the Court "shall appoint the most adequate plaintiff as lead plaintiff." *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).  The lead plaintiff is the member "of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. §78u-4(a)(3)(B)(i).  Here, Indiana Public Retirement System ("INPRS") should be appointed lead plaintiff because it filed a timely motion, has a substantial financial interest in the outcome of this litigation, and will typically and adequately represent the class's interests.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).  In addition, INPRS' selection of Robbins Geller as lead counsel for the putative class should be approved.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.   FACTUAL BACKGROUND

BellRing, together with its subsidiaries, provides various nutrition products.  BellRing stock trades on the New York Stock Exchange under the ticker BRBR.

The complaint alleges that defendants throughout the Class Period made false and/or misleading statements and/or failed to disclose that: (i) BellRing's reported sales during the Class Period were materially attributable to temporary inventory stockpiling by several of its key customers, which concealed the erosion of the Company's market share as competition intensified;

4904-7843-0361

(ii) contrary to defendants' repeated representations, the strong sales results did not reflect increased end-consumer demand or brand momentum; (iii) customers accumulated excess inventory as a safeguard against product shortages that had previously constrained BellRing's supply; and (iv) once customers gained confidence that product shortages were a thing of the past, they promptly reduced their inventory by selling through existing products and cutting back on new orders.

On May 6, 2025, BellRing revealed that "several key retailers lowered their weeks of supply on hand, which is expected to be a mid-single-digit headwind to our third quarter growth," and that "[w]e now expect Q3 net sales growth of low single digits." ECF 1 at ¶9. BellRing CEO, defendant Darcy Horn Davenport, further revealed that retailers had been "hoarding inventory to make sure that they didn't run out of stock on shelf" and that since there had been "several quarters of high in-stock rates" customers "felt comfortable about bringing [inventory] down. We thought this could happen." *Id.* On this news, the price of BellRing stock fell 19%.

Then, on August 4, 2025, BellRing reported its third quarter 2025 financial results and "narrowed its fiscal year 2025 outlook for net sales." ECF 1 at ¶11. The next day, defendant Davenport attributed the disappointing new sales outlook to competitive headwinds, noting that "it is not surprising to see new protein RTDs enter[ed] the [convenient nutrition] category, especially in its biggest channel cloud," and that although the Company had secured new inventory space with a large club retailer, "several other competitors gained . . . space as well. So we're assuming this increases some competitive pressure in club." *Id.* at ¶12. On this news, the price of BellRing stock fell nearly 33%.

Following the end of the currently alleged Class Period, on February 3, 2026, BellRing revealed that end-user consumption of its RTD products had declined 14% sequentially in its all-important club channel, down significantly from 23% growth the prior quarter. During BellRing's

- 2 -

subsequent earnings call, defendant Davenport further revealed that consumption slowed due to competitor promotions, a trend the Company now acknowledged was expected to continue for the remainder of the year.  As a result, BellRing slashed guidance and announced defendant Davenport's unexpected retirement.  On this news, the price of BellRing stock fell an additional 14%.As a result of defendants' alleged wrongful acts and omissions and the decline in the value of BellRing securities, INPRS and other class members have suffered significant losses and damages.

## III.    ARGUMENT

### A.    INPRS Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint.  *See* 15 U.S.C. §78u-4(a)(3)(A)(i).  Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  INPRS meets these requirements and should be appointed Lead Plaintiff.

### 1.    INPRS' Motion Is Timely

The statutory notice of this action was published on January 22, 2026 in *Business Wire* and advised putative class members of the action's pendency, the claims asserted, the proposed Class

4904-7843-0361

Period, and the right to move the Court to be appointed as lead plaintiff by March 23, 2026. *See* Declaration of Mathew Andrews in Support of Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel ("Andrews Decl."), Ex. A, filed concurrently herewith. Because this motion is being filed by the statutory deadline, it is timely, and INPRS is entitled to be considered for appointment as lead plaintiff.

### 2. INPRS Has a Substantial Financial Interest in the Relief Sought by the Class

As evidenced by its Certification and loss chart, INPRS suffered nearly $3 million in losses on a first-in, first-out basis ("FIFO") and more than $2.1 million in losses on a last-in, first-out ("LIFO") basis on its purchases of BellRing securities during the Class Period as a result of defendants' alleged violations of the federal securities laws.[1] *See* Andrews Decl., Exs. B, C. To the best of INPRS' counsel's knowledge, there are no other plaintiffs with a larger financial interest.

### 3. INPRS Is Typical and Adequate of the Purported Class

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). At this early stage of litigation, only typicality and adequacy are pertinent. *See Roofers Loc. No. 149 Pension Fund v. Amgen Inc.*, 2023 WL 4406286, at *2 (S.D.N.Y. July 7, 2023). "The typicality requirement is satisfied when the representative party's claims 'arise from the same course of events' as those of the rest of the class, and when that party 'makes similar legal arguments to prove the defendant's liability.'" *Id.* (citation omitted). "And the adequacy requirement is satisfied where '(1) class

---

[1] If appointed Lead Plaintiff, INPRS intends to incorporate the February 3, 2026 corrective disclosure (*see supra* §II) in an amended complaint. If the impact of that disclosure is considered as part of the relief sought by the class, INPRS' financial interest is $4.59 million (FIFO) or $3.31 million (LIFO). Between the end of the current Class Period and February 2, 2026, INPRS purchased 23,220 additional BellRing shares and sold 14,425 shares.

4904-7843-0361

counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy.'" *Id.* (citation omitted).

Here, INPRS' claims are typical of those of the class because – like all class members – it purchased BellRing securities during the Class Period at artificially inflated prices, and suffered losses as a result of defendants' alleged misconduct. Substantially similar – if not identical – legal arguments and discovery will be required to prove defendants' liability. INPRS therefore satisfies the typicality requirement of Rule 23.

Further, as a sophisticated institutional investor, INPRS is precisely the type of plaintiff whose participation in securities class actions Congress sought to encourage through the enactment of the PSLRA. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99-100 n.23 (S.D.N.Y. 2005) ("'The legislative history of the PSLRA reflects a preference for institutional investors in the lead plaintiff role.'") (citation omitted); *Malasky v. IAC/Interactivecorp*, 2004 WL 2980085, at *4 (S.D.N.Y. Dec. 21, 2004) (discussing the PSLRA's preference for institutional investors); *see also* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Indeed, INPRS provides retirement, disability, survivor, and other benefits to the state of Indiana's teachers, police officers, firefighters, judges, attorneys, public employees, and others. INPRS manages tens of billions of dollars for the benefit of hundreds of thousands of active and retired members, representing more than 1,300 employers, including public universities, schools, municipalities, and state agencies. Moreover, INPRS has extensive experience

4904-7843-0361

successfully serving as lead plaintiff in securities class actions and has recovered hundreds of millions of dollars for investors. *See Dicker v. TuSimple Holdings Inc.*, No. 3:22-cv-01300 (S.D. Cal.) ($189 million recovery with INPRS as lead plaintiff and Robbins Geller as lead counsel is largest ever PSLRA recovery in the Southern District of California); *Karinski v. Stamps.com, Inc.*, No. 2:19-cv-01828 (C.D. Cal.) ($100 million recovery with INPRS as lead plaintiff). Finally, as set forth in more detail below, INPRS has retained Robbins Geller as lead counsel, a law firm with extensive experience prosecuting securities class actions. Accordingly, INPRS readily satisfies the adequacy requirement.

Because INPRS filed a timely motion, has a large financial interest in the relief sought by the class, and demonstrated its typicality and adequacy, the Court should adopt the presumption that INPRS is the "most adequate plaintiff."

**B.      The Court Should Approve INPRS' Selection of Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). INPRS has selected Robbins Geller to serve as lead counsel in this case.[2]

Robbins Geller, a 200-attorney nationwide law firm with offices in New York, regularly practices complex securities litigation. The Firm's securities department includes numerous trial attorneys and many former federal and state prosecutors, and utilizes an extensive group of in-house experts to aid in the prosecution of complex securities issues. Courts throughout the country have noted Robbins Geller's reputation for excellence, which has resulted in the appointment of Robbins Geller attorneys to lead roles in hundreds of complex class action securities cases. *See, e.g.*, *Nayani*

---

[2]      For a detailed description of Robbins Geller's track record, resources, and attorneys, please see https://www.rgrdlaw.com. An electronic or paper version of the Firm's resume is available upon the Court's request, if preferred.

4904-7843-0361

*v. LifeStance Health Grp., Inc.*, No. 1:22-cv-06833-JSR (S.D.N.Y.) (Robbins Geller as lead counsel obtained a $50 million securities class action recovery before this Court); *In re Am. Realty Cap. Props., Inc. Litig.*, No. 1:15-mc-00040-AKH (S.D.N.Y.) (Concerning Robbins Geller's role as sole lead counsel in recovering $1.025 billion for the class in a securities case, stating "the role of lead counsel was fulfilled in an extremely fine fashion by [Robbins Geller]. At every juncture, the representations made to me were reliable, the arguments were cogent, and the representation of their client was zealous."); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, No. 1:08-cv-10783-LAP (S.D.N.Y.) (Concerning Robbins Geller's role as sole lead counsel in recovering $272 million for the class of MBS purchasers, stating: "Counsel, thank you for your papers. They were, by the way, extraordinary papers in support of the settlement," and acknowledging "plaintiffs' counsel's success in the Second Circuit essentially changing the law. I will also note what counsel have said, and that is that this case illustrates the proper functioning of the statute. . . . Counsel, you can all be proud of what you've done for your clients. You've done an extraordinarily good job.").

Robbins Geller has also obtained the largest securities fraud class action recoveries in the Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits, as well as a 2019 PSLRA class action trial victory in *HsingChing Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865-AG (C.D. Cal.), where the jury returned a verdict for plaintiff, finding that defendants Puma Biotechnology, Inc. and its CEO committed securities fraud.[3]

---

[3]    *See In re Enron Corp. Sec. Litig.*, No. 4:01-cv-03624 (S.D. Tex.) ($7.3 billion recovery is largest securities class action recovery in U.S. history and in the Fifth Circuit); *In re Cardinal Health, Inc. Sec. Litig.*, No. 2:04-cv-00575-ALM (S.D. Ohio) ($600 million recovery is the largest securities class action recovery in the Sixth Circuit); *Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*, No. 1:02-cv-05893 (N.D. Ill.) ($1.575 billion recovery is the largest securities class action recovery following a trial as well as the largest securities class action recovery in the Seventh Circuit); *In re UnitedHealth Grp. Inc. Sec. Litig.*, No. 0:06-cv-01691-JMR-FLN (D. Minn.) ($925 million recovery is the largest securities class action recovery in the Eighth Circuit); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 1:01-cv-01451-REB-KLM (D. Colo.) ($445 million recovery is

- 7 -

4904-7843-0361

Based upon Robbins Geller's extensive experience and proven track record as counsel in securities class actions, the Court can be assured that by granting this motion, the class will receive the highest caliber of legal representation. Accordingly, INPRS' selection of Robbins Geller as lead counsel is reasonable and should be approved.

## IV. CONCLUSION

INPRS satisfies each of the PSLRA's requirements for appointment as lead plaintiff. Accordingly, INPRS respectfully requests that the Court appoint it as Lead Plaintiff and approve its selection of Lead Counsel.

DATED: March 23, 2026                    ROBBINS GELLER RUDMAN
        & DOWD LLP
MATHEW ANDREWS

s/ Mathew Andrews
MATHEW ANDREWS

420 Lexington Avenue, Suite 1832
New York, NY 10170
Telephone: 212/432-5100
mandrews@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

---

the largest securities class action recovery in the Tenth Circuit); *In re HealthSouth Corp. Sec. Litig.*, No. 2:03-cv-01500-KOB-TMP (N.D. Ala.) ($671 million recovery is the largest securities class action recovery in the Eleventh Circuit).

4904-7843-0361

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
MICHAEL ALBERT
KENNETH P. DOLITSKY
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
dmyers@rgrdlaw.com
malbert@rgrdlaw.com
kdolitsky@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing memorandum of law complies with the formatting and word-count limitations pursuant to Rule 7.1(c) of the United States District Court for the Southern District of New York as it contains 2,372 words.

s/ Mathew Andrews
MATHEW ANDREWS

4904-7843-0361