UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: BELLRING BRANDS, INC. SECURITIES LITIGATION | 26-cv-575 (JSR)<br><br>OPINION AND ORDER |

JED S. RAKOFF, U.S.D.J.

This is a putative securities class action brought against BellRing Brands, Inc. ("BellRing") and three of its officers, Darcy Horn Davenport, Paul Rode, and Robert V. Vitale, alleging violations of § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, and § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). After the Court selected Indiana Public Retirement System ("IPRS") as the lead plaintiff in this action, see id. § 78u-4(a)(3), IPRS filed the operative amended complaint, see ECF No. 53 ("Compl."). The amended complaint essentially alleges that during the period from August 6, 2024 to May 5, 2025 (the "First Period"), defendants made false or misleading statements regarding the reasons for BellRing's increase in sales and that during the period from May 6, 2025 through May 4, 2026 (the "Second Period"), defendants made false or misleading statements regarding the strength of demand for BellRing's products. Defendants then moved to dismiss the

amended complaint on various grounds discussed below. See ECF No. 61.

Upon full consideration of the parties' written submissions and oral argument, the Court on July 28, 2026 issued a "bottom-line" Order that in effect granted defendants' motion so far as the First Period was concerned and denied it so far as the Second Period was concerned.[1] See ECF No. 70. This Opinion provides the reasons for these rulings and clarifies their scope.

## I. Factual Allegations

The relevant factual allegations of the amended complaint, taken (where well-pleaded) most favorably to plaintiff, are as follows.[2]

BellRing is a consumer products company that sells protein-based goods, the most successful of which has been its ready-to-drink ("RTD") protein shakes, marketed as "Premier Protein shakes." During most of the alleged class period, these shakes

---

[1] The Order of July 28, 2026 contained a typographical error stating that the close of the class period was "May 4, 2025" when it should have been "May 4, 2026." The parties were immediately informed of this error and requested only that it be corrected when this full Opinion issued, which, as indicated below, is now accomplished.

[2] For purposes of resolving the instant motion, the Court also considers the allegations contained in "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing this suit." In re Shanda Games Ltd. Sec. Litig., 128 F.4th 26, 41 (2d Cir. 2025) (internal quotation marks omitted).

accounted for more than 80% of BellRing's sales. See Compl. ¶ 2. BellRing distributes its products through club channels (such as Costco, Sam's Club, and BJ's), mass retailers (such as Walmart), and online platforms (such as Amazon). See id. ¶ 3. After supply constraints limited BellRing's ability to satisfy increasing retailer demand in the years prior to 2024, see id. ¶¶ 4, 57, BellRing expanded its manufacturing capacity, see id. ¶¶ 4, 59. Plaintiff alleges that defendants materially misled investors, first by largely concealing in the First Period from August 6, 2024 to May 5, 2025 that growth in sales was materially attributable to short-term "hoarding" and, second, by largely concealing in the Second Period from May 6, 2025 to May 4, 2026 that suggestions of demand growth were overstated as a result of reduced consumption, increased competition, short-term promotions, and other factors.

## A. Alleged Misrepresentations and Omissions Between August 6, 2024, and May 5, 2025 (the First Period)

The amended complaint alleges that, as a result of the shortages in supply of Premier Protein shakes that had occurred in the past, retailers in the period beginning around mid-2024 began protecting themselves against future supply disruptions by purchasing Premier Protein products far in excess of consumer demand, a process known as "hoarding." See id. ¶ 60. The amended complaint alleges that this hoarding "temporarily, artificially,

and materially boosted BellRing's sales of Premier Protein products" and also "temporarily, artificially, and materially boosted BellRing's stock price." Id.

The amended complaint further alleges that defendants, while knowing that this hoarding was temporary, mislead investors by stating that the retailers' "inventory gaps" were being filled, thus implicitly suggesting, plaintiff claims, that such gaps were the result of continuing demand. For example, during BellRing's third-quarter earnings call on August 6, 2024, defendant Rode, BellRing's Chief Financial Officer, stated that "trade inventory levels are improved . . . nearly to target levels with the remaining gaps to be filled in Q4," and that BellRing "expect[s] shipment dollar growth for Premier RTD shakes to modestly outpace consumption growth as we fill the remaining retailer inventory gaps." Id. ¶ 99 (internal quotation marks omitted). During the same call, defendant Davenport, BellRing's Chief Executive Officer, likewise stated that BellRing was "filling the gap of trade inventory that [it] didn't fill in Q3." Id. (internal quotation marks omitted).

Three months later, during BellRing's fourth-quarter earnings call on November 19, 2024, Rode further stated that "[s]hipment dollar growth outpaced consumption dollar growth with shipments benefiting from . . . replenishment of food channel shelf gaps." Id. ¶ 102 (internal quotation marks

omitted). "As expected," Rode said, "shake inventory levels increased in the fourth quarter . . ., putting us in a strong inventory position at the end of the year." Id. (internal quotation marks omitted). None of this, plaintiff alleges, conveyed defendants' knowledge that the inventory gaps that were now being filled were the result of short-term hoarding in response to earlier events, as opposed to continuing demand.

The amended complaint also alleges that in filings with the Securities and Exchange Commission ("SEC"), defendants attributed increased sales to particular sources, such as "organic growth" and "distribution gains," but omitted that temporary retailer hoarding also contributed. See id. ¶¶ 113-14, 116-17, 119-20. The amended complaint further alleges that defendants well knew about the temporary nature of hoarding as a result of constant communication with the retailers themselves. See id. ¶ 61.

**B. Alleged Misrepresentations and Omissions Between May 6, 2025, and May 4, 2026 (the Second Period)**

Eventually, however, as word of the hoarding began to circulate, defendants' fraud shifted, according to the amended complaint, to misrepresentations about the level of consumption, as well as omissions as to the role of promotions, increased competition, and the like. During BellRing's May 6, 2025 earnings call, when analysts asked whether retailer hoarding

reflected underlying weakness in consumption, Davenport stated that "there's really no change in consumption." Id. ¶ 129. (internal quotation marks omitted). "As we go into Q3," she continued, "we're expecting to continue to see strong consumption . . . incredibly strong." Id. (internal quotation marks omitted). She further stated that there was "no softness, no concern around consumption." Id. (internal quotation marks omitted).

Three months later, during BellRing's third-quarter earnings call on August 5, 2025, Davenport downplayed the long-term effect of increased competition. "I think that this is sort of a unique situation," Davenport said, "where the competition is . . . kind of increasing for a short period of time because of this unique situation and then will come down a little bit." Id. (internal quotation marks omitted). Rode further stated that "Premier Protein [sales were] lifted by . . . incremental promotional activity as we return to historical promotional levels." Id. ¶ 148 (internal quotation marks omitted).

Still further, during BellRing's fourth-quarter earnings call on November 18, 2025, Davenport stated that "[w]hen we look at the interaction between us and many of the competitors, we have a clear position . . . [a]nd we are sourcing some volume from those competitors." Id. ¶ 158 (internal quotation marks omitted). On February 3, 2026, during BellRing's first-quarter

earnings call, Davenport stated that consumption had only seen a "[s]mall impact from increased competition." Id. ¶ 165 (internal quotation marks omitted).

According to the amended complaint, defendants actually knew that consumption was weak as a result of several factors. Defendants, plaintiff alleges, knew this from two platforms, Numerator and Circana, that provided them with data on brand shifting, category expansion/contraction, category churn, sales on promotion, and market share. See, e.g., id. ¶¶ 69, 85, 133. Defendants also admitted, plaintiff alleges, that they tracked new competitors entering the market. See id. ¶ 134 & n.8.

### C. Corrective Disclosures and Their Effect (after the Second Period)

Plaintiff further alleges that, beginning on May 6, 2026, defendants began belatedly revealing the truth through a series of corrective disclosures, each causing a decline in BellRing's share price. See id. ¶¶ 241, 243. On May 6, 2026, defendants disclosed that "retailers had been 'hoarding' inventory since summer 2024, that retailers were ending the practice, that retailers would purchase less product while they sold down existing inventory, and that this decline in sales was 'expected to be a mid-single-digit headwind to . . . third quarter growth.'" Id. ¶ 245. Between May 5, 2025, and May 6, 2025, BellRing's share price declined from $78.43 per share to $63.55

per share – a decrease of $14.88 per share, or approximately 19%. See id. ¶ 246.

Three months later, on August 5, 2025, defendants reduced BellRing's outlook on net sales for the full year and attributed the decline to increased competition and BellRing's over-reliance "on major club promotions dating back to at least January 2025." Id. 249 (internal quotation marks omitted). BellRing's share price declined by $17.46 per share, or approximately 33%, from $53.64 per share on August 4, 2025, to $36.18 per share on August 5, 2025. See id. ¶ 250.

On November 18, 2025, defendants acknowledged "a more competitive environment" and "fairly low [sales on] promotion, typically about 25% to 30% sold on [promotion]." Id. ¶ 252 (internal quotation marks omitted). That day, BellRing's stock fell to a low of $22.45 per share, from a prior closing price of $25.62 per share. See id. ¶ 253.

The following year, on February 3, 2026, defendants again reduced BellRing's outlook on net sales for the full year and disclosed that "BellRing had chosen not to repeat prior promotional activity." Id. ¶¶ 255-56 (internal quotation marks omitted). On this news, BellRing's share price fell again, declining by $3.51 per share, or approximately 14%, from $24.39 per share on February 2, 2026, to $20.88 per share on February 3, 2026. See id. ¶ 257.

Finally, three months later, on May 5, 2026, defendants stated that their "latest estimates were internally somewhere around 40 new competitors [entering the market] over the last 18 months." Id. (internal quotation marks omitted). From May 4, 2026, to May 5, 2026, BellRing's share price declined from $17.36 per share to $10.63 per share - a decrease of $6.73 per share, or approximately 39%. See id. ¶ 262.

## II. Legal Standard

On a motion to dismiss for failure to state a claim, a court must assess whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). To state a claim under § 10(b) of the Exchange Act, a plaintiff must allege: (1) falsity, i.e., a material misrepresentation or omission, (2) scienter, i.e., a wrongful state of mind, (3) a connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. See Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005). Under Rule 9(b) of the Federal Rules of Civil Procedure, these elements, other than scienter, must be pleaded with particularity. Additionally, however, the Private Securities Litigation Reform Act ("PSLRA") requires a plaintiff to "state with particularity facts giving rise to a

strong inference that the defendant acted with the required state of mind." Id. at 345 (internal quotation marks omitted).

## III. Analysis

The Court will address each of the categories of statements and omissions that IPRS alleges violated §§ 10(b) and 20(a) of the Exchange Act. For the reasons explained below, the Court concludes that the claims may proceed only on the basis of alleged misstatements about consumption. In addition, the claims against defendant Vitale must be dismissed for failure to adequately allege scienter.

### A. Hoarding

With respect to the period between August 6, 2024 and May 5, 2025 (the First Period), plaintiff's primary allegation is that defendants misled investors by stating, during BellRing's third-quarter and fourth-quarter earnings calls on August 6, 2024, and November 19, 2024, that retailers were accumulating inventory to fill trade inventory gaps. See Compl. ¶¶ 99-100, 102. According to the amended complaint, defendants' statements were materially misleading because, as Rode and Davenport later admitted during BellRing's second-quarter earnings call in 2025, retailers had been hoarding inventory during the period in question. See ECF No. 64 ("Mem. in Opp.") at 9; Compl. ¶¶ 105-06.

But even putting aside that the only evidence of "hoarding" adduced by plaintiff is BellRing's own modest statements, see Compl. ¶¶ 105-06, there is nothing inconsistent about hoarding and filling trade inventory gaps. In particular, in 2024, retailers could have purchased inventory to fill shelf gaps caused by insufficient production and also to prepare for potential supply issues that might be caused by BellRing's not adequately expanding capacity. Moreover, defendants' "decision to speak about one aspect of sales does not necessarily require [them] to address other issues." Smith v. Gap, Inc., 177 F.4th 405, 412 (2d Cir. 2026). Thus, defendants' statements about filling trade inventory gaps did not further create a duty to disclose the retailer hoarding. See id.

Moreover, as the amended complaint itself notes, defendants had in fact previously advised investors that retailers hoarded inventory in response to supply issues and that hoarding inventory artificially boosted sales. See, e.g., Compl. ¶ 63. Plaintiff has therefore failed to adequately allege that defendants made a material omission regarding "hoarding." See Stone Fam. Tr. v. Credit Suisse AG, 2022 WL 954743, at *7 (S.D.N.Y. Mar. 30, 2022).

**B. Promotions**

With respect to the period between May 6, 2025 and May 4, 2026 (the Second Period), plaintiff alleges several different

categories of supposed misrepresentations, all but one of which are insufficient. To begin, the amended complaint asserts that defendants misrepresented BellRing's promotional events (i.e., events offering products at reduced prices or other promotional benefits) as "incremental" during the August and November 2025 earnings calls when, in fact, the percentage of Premier Protein sales occurring on promotion had sharply increased, thus, according to plaintiff, artificially increasing sales. See Compl. ¶¶ 148-49, 160-61. However, defendants used the term "incremental promotional events" in the context of explaining the drivers of growth in consumption over a substantial period, and a reasonable investor would understand defendants to mean an increase over time in promotional events, not necessarily a small increase. See id. ¶ 161 (internal quotation marks omitted); see Singh v. Cigna Corp., 918 F.3d 57, 63 (2d Cir. 2019).

The data plaintiff cites also do not demonstrate that promotional events were not "incremental." The percentage of sales occurring on promotion increased by one percentage point year-over-year in July 2025, the month before the August 2025 earnings call, and the amended complaint presents no data for October, November, or December 2025, the months at issue during

the November 2025 earnings call. See Compl. ¶ 161.[3] Moreover, the amended complaint's allegations concerning promotions are vague and, while describing that defendants "massively increased the frequency and scope of promotional activity," provide no details on what those promotions were, their frequency, or their scope. Id. ¶ 80.

Plaintiff has therefore failed to adequately allege a material misrepresentation regarding promotions.

### C. Competition

The amended complaint next alleges that defendants misled investors about actual and long-term effect of competition during certain earnings calls in the 2025-2026 period by stating that: (1) competition was due to a "unique" and "temporary" expansion in the RTD floor space at a club retailer, id. ¶ 145 (internal quotation marks omitted); (2) that BellRing was "sourcing some volume" from competitors, id. ¶ 158 (internal quotation marks omitted); and (3) that there was a "[s]mall impact" on consumption from increased competition, id. ¶ 165 (internal quotation marks omitted).

According to plaintiff, the first statement was misleading when made because data on brand shifting showed that increased

---

[3] Plaintiff further argues that defendants violated Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303, by failing to disclose in certain SEC filings that retailer hoarding and "unsustainable" promotions contributed to sales growth. See Compl. ¶¶ 181-82, 187-88. For the reasons already set forth here, this claim also fails.

competition in the club channel was neither "unique" nor "temporary." See id. ¶¶ 72, 146. But read in full, defendants' statement accurately described one club retailer's expansion of RTD floor space and the resultant competition as "unique" and "temporary," not competition in club retailers generally. See id. ¶ 145. In fact, defendants noted on the same earnings call "the inevitability of increased competition," "increases [in] competitive pressure in club," and "new protein RTDs enter[ing] the category, especially in [BellRing's] biggest channel club." ECF No. 63-13.

Defendants' second statement was, according to plaintiff, similarly false when made because data indicating that consumers shifted to other brands. See Compl. ¶¶ 158, 159(c). But data that BellRing was losing volume in the aggregate due to consumers switching to competitors are not inconsistent with the statement that BellRing was "sourcing some volume" from specific competitors. See id. ¶¶ 72, 158; ECF No. 63-17. Defendants' statement, moreover, was made in the context of a question about competitors specifically at BellRing's largest customer. See ECF No. 63-17.

Plaintiff finally argues that the third statement was misleading because BellRing was facing "significant and intensifying" competition from approximately forty competitors at the time the statement was made. Compl. ¶ 166; see id. ¶ 165.

But as the amended complaint itself notes, defendants' statement was made in response to a question about the drivers of soft consumption at a particular mass retailer. See id. ¶ 165. In full, defendants' statement was: "So in the mass retailer, the delay [in rolling out a promotion] was the biggest contributor to the softer consumption. Small impact from increased consumption but the larger was the timing." Id. (internal quotation marks omitted). An investor could not have reasonably understood defendants' statement about a "small impact" at one retailer to be a statement about the overall impact of increased competition on consumption in general. See, e.g., In re Skechers USA, Inc. Sec. Litig., 444 F. Supp. 3d 498, 516 (S.D.N.Y. 2020).

Moreover, even assuming plaintiff has adequately alleged the falsity of defendants' statements regarding competition, plaintiff has failed to plead facts giving rise to the heightened requirement of scienter under the PSLRA. Defendants' high-level statement that they tracked competitors does not reflect detailed knowledge. Compare San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc., 732 F. Supp. 3d 300, 318-19 (S.D.N.Y. 2024), with Compl. ¶ 134 n.8.

**D. Risk Factor Disclosures**

The amended complaint also alleges that defendants misled investors in certain SEC filings by characterizing risks related to competition and promotions as hypothetical when those risks

had already materialized. See Compl. ¶¶ 190-92; Set Cap. LLC v. Credit Suisse Grp. AG, 996 F.3d 64, 85 (2d Cir. 2021). "Whether a warning about a future risk is misleading when it fails to disclose that the risk already materialized depends on how a reasonable investor would understand the statements taken together and in context." Smith, 177 F.4th at 410 (internal quotation marks omitted). The Court concludes that, under the circumstances here, the challenged risk disclosures would not have misled a reasonable investor.

BellRing's disclosures "concerned ubiquitous risks in the industry." Id. at 411. Consumer products companies regularly offer promotions on products and compete in their product categories with competitors. "No reasonable investor would have understood [BellRing's] acknowledgement of th[ese general] risk[s] to mean that [BellRing] had not," at the time, increased temporary promotions or lost market position. Id. Moreover, unlike in Set Capital, the challenged risk disclosures here did not "assure investors" that BellRing "had no reason to believe that the risks it warned about would materialize." Id. (internal quotation marks omitted). Instead, BellRing's disclosures emphasized "BellRing's ability to continue to compete" and "to maintain the net selling prices of its products and manage promotional activities," Compl. ¶ 191 (emphases added), presenting these risks as not merely hypothetical.

Once again, plaintiff has failed to adequately allege a basis on which the statements to the SEC regarding risk disclosures can support its claim.

**E. Consumption**

There is, however, one category of statements made in the Second Period that remains a basis for liability, to wit, statements about consumer consumption of BellRing's products. The amended complaint alleges that, in response to a question about whether BellRing had experienced "either [a] deceleration in consumption or disappointment in consumption," defendants (in the May 6, 2025 earnings call) misrepresented that "there's really no change in consumption," that they "continue to see strong consumption," and that there is "absolutely no softness, no concern around consumption." Id. ¶ 129 (internal quotation marks omitted); see ECF No. 63-11. Defendants argue that this basis of liability must also be dismissed because the amended complaint not only fails to adequately allege actionable misstatements but also fails to adequately plead scienter and loss causation. The Court considers each in turn.

**i. Falsity**

Plaintiff argues that the above-quoted statements were false or misleading when made because, among other things, defendants possessed data indicating that key consumption

metrics were deteriorating.[4] See Compl. ¶¶ 131-32. These data showed that total volume declined by 1.9% year-over-year and by 2.3% year-over-year in the first and second quarters of 2025, respectively, because of customers shifting to competing brands, see id. ¶ 72; that total volume purchased by existing customers increased by 11.9% year-over-year in the first quarter of 2025 but by only 7.3% year-over-year in the second quarter of 2025, see id. ¶ 73; and that total volume purchased by new customers increased by 22.4% year-over-year in the first quarter of 2025 but by only 16.6% in the second quarter of 2025, see id. ¶ 75. In other words, defendants possessed data clearly indicating that consumers were increasingly shifting to competitors, that existing consumer purchases were decelerating, and that new consumer purchases were decelerating. At this juncture, where all reasonable inferences favoring plaintiff must be considered, these facts are sufficient to warrant a reasonable inference that the above-quoted statements were false or misleading when made.

[4] Plaintiff also challenges the accuracy of another statement made during the same earnings call in the second quarter of 2025: "As we go into Q3, we're expecting to continue to see strong consumption . . . . We expect . . . Q3 to land kind of mid to high-teens, so incredibly strong." Compl. ¶ 129 (internal quotation marks omitted); see ECF No. 63-11. The Court concludes that this statement is a forward-looking projection that falls within the heartland of the PSLRA's safe harbor. See S.S. Trade Ass'n of Balt.-Int'l Longshoreman's Ass'n Pension Fund v. Olo Inc., 704 F. Supp. 3d 429, 441-42 (S.D.N.Y. 2023).

Defendants' rather weak response is that the data that showed declines were available to members of the public. See ECF No. 68 at 13:4-15; Compl. ¶¶ 71, 137. But "a 'truth-on-the-market defense' is generally an inappropriate basis for dismissal on the pleadings." Karimi v. Deutsche Bank Aktiengesellschaft, 607 F. Supp. 3d 381, 394 (S.D.N.Y. 2022). Even applying that defense, it cannot be said that no reasonable investor could have been misled by defendants' statements. See Puddu v. 6D Glob. Techs., Inc., 2021 WL 1198566, at *7 (S.D.N.Y. Mar. 30, 2021).

**ii. Scienter**

Defendants also argue with respect to the seemingly false statements about consumption that plaintiff has not adequately pled facts giving rise to the heightened scienter requirement of the PSLRA. However, with respect to BellRing and the individual defendants other than Vitale, the amended complaint alleges that defendants had access to, were aware of, and yet disregarded information about consumption that rendered the challenged statements misleading. See Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford, 794 F.3d 297, 306 (2d Cir. 2015). In particular, the complaint identifies data on key consumption metrics that defendants possessed, including fundamental data on brand shifting, category expansion/contraction, category churn, and promotions on sale that indicated the declines in

consumption. The complaint alleges that defendants Davenport and Rode were aware of the data because, as Davenport represented, they reviewed and relied on this data for day-to-day management of the business and because their public statements reference the data. See Compl. ¶¶ 52-53. Drawing all plausible inferences in plaintiff's favor, the Court concludes that these allegations plead a strong inference of scienter. See, e.g., Baxter v. MongoDB, Inc., 832 F. Supp. 3d 214, 286-88 (2d Cir. 2026).

However, the amended complaint contains no specific allegations about any means by which defendant Vitale was made aware of the softness in consumption, other than by virtue of his membership on BellRing's Board of Directors. The only scienter allegation specific to Vitale is his sale of $28.1 million of stock in February 2025, at the peak of BellRing's inflated share price before BellRing's first corrective disclosure. See Compl. ¶¶ 229-32; Mem. in Opp. at 24-25. But the amended complaint itself indicates that Vitale's sale was made to satisfy tax obligations in connection with restricted-stock-unit vesting. See Compl. ¶ 230; In re Teladoc Health, Inc. Sec. Litig., 2025 WL 886934, at *10 (S.D.N.Y. Mar. 21, 2025). Accordingly, all claims against Vitale must be dismissed for failure to adequately allege scienter.

**iii. Loss Causation**

Defendants finally argue that plaintiff fails to adequately allege loss causation with respect to the alleged consumption misstatements. The PSLRA "imposes on plaintiff[] the burden of proving that the defendant[s'] misrepresentations caused the loss for which the plaintiff[] seek[s] to recover." Abramson v. Newlink Genetics Corp., 965 F.3d 165, 179 (2d Cir. 2020) (internal quotation marks omitted). "To establish loss causation, [p]laintiff[] must demonstrate that the subject of the fraudulent statement or omission was the cause of the actual loss suffered." Id. (cleaned up). Here, the amended complaint alleges that BellRing's share price fell each time defendants revealed that consumption was weaker than defendants had stated. See, e.g., Compl. ¶ 249 (disclosing that BellRing had relied on "major club promotions" since at least January 2025); id. ¶¶ 252, 255. At this stage of the litigation, these allegations are sufficient. See Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC, 750 F.3d 227, 233 (2d Cir. 2014).

The Court therefore concludes that plaintiff's § 10(b) claim may proceed on the basis of the alleged misstatements about consumption, except against defendant Vitale.

**F. § 20(a) Control Person Claims**

Plaintiff also claims that defendants Davenport, Rode, and Vitale are liable under § 20(a) of the Exchange Act as "controlling persons" of BellRing. Compl. ¶ 286. Defendants'

only basis for arguing that the § 20(a) claim should be dismissed is their contention that the § 10(b) claim must be dismissed, which would mean that plaintiff has failed to adequately allege a primary violation. See ECF No. 62 at 25. Since the Court concludes that the amended complaint adequately alleges a primary violation of § 10(b) on the basis of misstatements about consumption, the Court denies to that extent defendants' motion to dismiss the § 20(a) claim against defendants Davenport and Rode. See S.S. Trade Ass'n of Balt.-Int'l Longshoreman's Ass'n Pension Fund, 704 F. Supp. 3d at 449. However, for the reasons discussed in the scienter analysis above, the amended complaint fails to adequately plead that defendant Vitale was a culpable participant in the alleged securities fraud, and the § 20(a) claim is therefore dismissed as against him. See Karimi, 607 F. Supp. 3d at 399.

## IV. Conclusion

For the reasons set forth above, the Court concludes that the §§ 10(b) and 20(a) claims may proceed against all defendants except Vitale but only on the basis of alleged misstatements about consumption made during the Second Period. The Court thus reconfirms its "bottom-line" Order granting in part and denying in part defendants' motion to dismiss, see ECF No. 70, but hereby clarifies and amends that Order to correct the typographical error previously referenced, to clarify the scope

of which statements remaining support a claim, and to dismiss all claims against defendant Vitale. The case will now continue in accordance with the schedule previously set by the Court.

New York, NY
October 20, 2026

JED S. RAKOFF, U.S.D.J.