UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re BELLRING BRANDS, INC. SECURITIES LITIGATION | Civil Action No. 1:26-cv-00575-JSR<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....... 1

RELEVANT PROCEDURAL BACKGROUND ....... 3

THE SAC ....... 4

APPLICABLE LEGAL STANDARDS ....... 6

ARGUMENT ....... 7

I. There Is Good Cause to Grant Plaintiff's Motion ....... 7

II. The Requested Amendment Would Result in No Undue Prejudice ....... 8

III. Amendment Would Not Be Futile ....... 8

A. Davenport's Statements During the August 5, 2025 Call Were Materially False and Misleading ....... 9

B. The SAC Adequately Pleads Scienter and Loss Causation for the New Statements ....... 16

C. The New Statements Are Not Protected by the PSLRA Safe Harbor ....... 17

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
404 F.3d 566 (2d Cir. 2005)....7

*Ambac Assurance Corp. v. EMC Mortg. Corp.*,
2010 WL 11595698
(S.D.N.Y. Dec. 16, 2010)....6

*Block v. First Blood Assocs.*,
988 F.2d 344 (2d Cir. 1993)....7, 8

*Ganino v. Citizens Utils. Co.*,
228 F.3d 154 (2d Cir. 2000)....15, 16

*Gimpel v. The Hain Celestial Grp., Inc.*,
156 F.4th 121 (2d Cir. 2025)....9, 14, 15, 16

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
529 F. Supp. 3d 111 (S.D.N.Y. 2021)....10

*In re Bankr. Est. of Norske Skogindustrier ASA*,
2023 WL 3312388
(S.D.N.Y. May 8, 2023)....8

*In re eSpeed, Inc. Sec. Litig.*,
457 F. Supp. 2d 266 (S.D.N.Y. 2006)....16

*In re Hain Celestial Grp., Inc. Sec. Litig.*,
20 F.4th 131 (2d Cir. 2021)....14

*In re Petrobras Sec. Litig.*,
116 F. Supp. 3d 368 (S.D.N.Y. 2015)....10

*In re Signet Jewelers Ltd. Sec. Litig.*,
2018 WL 6167889
(S.D.N.Y. Nov. 26, 2018)....10

*In re Vivendi, S.A. Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016)....18

*Kassner v. 2nd Ave. Delicatessen Inc.*,
496 F.3d 229 (2d Cir. 2007)....7

**Page**

*Lucente v. Int'l Bus. Machines Corp.*,
310 F.3d 243 (2d Cir. 2002)....................9

*N.Y. v. Trump*,
158 F.4th 458 (2d Cir. 2025)....................6

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000)....................10, 17

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
367 F. Supp. 3d 16 (S.D.N.Y. 2019)....................15

*Parker v. Columbia Pictures Indus.*,
204 F.3d 326 (2d Cir. 2000)....................6

*Puddu v. 6D Glob. Techs., Inc.*,
2021 WL 1198566
(S.D.N.Y. Mar. 30, 2021)....................16

*Sills v. United Nat. Foods, Inc.*,
2024 WL 4188324
(S.D.N.Y. Sep. 13, 2024)....................9

*Sjunde AP-Fonden v. G.E.*,
341 F.R.D. 542 (S.D.N.Y. 2022)....................6, 7

*Stary v. Teladoc Health, Inc.*,
2026 WL 878939
(S.D.N.Y. Mar. 31, 2026)....................17

*Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*,
2005 WL 2148919
(S.D.N.Y. Sep. 6, 2005)....................16

*Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*,
531 F.3d 190 (2d Cir. 2008)....................17

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§78j(b)....................3
§78t(a)....................3
§78u-5(c)(1)(B)....................18

**Page**

Federal Rules of Civil Procedure
Rule 10b-5(b) ......................................................................................................14
Rule 15(a)..........................................................................................................1, 7
Rule 15(a)(2) ......................................................................................................7
Rule 16(b) ..........................................................................................................1
Rule 16(b)(4)......................................................................................................6

Private Securities LitigationR eform Act of 1995 ("PSLRA")
Pub. L. No. 104-67, 109 Stat. 737 (1995)...........................................................17

Pursuant to the telephonic conference on October 26, 2026 and Federal Rules of Civil Procedure 15(a) and 16(b) ("Rule"), Lead Plaintiff Indiana Public Retirement System ("Plaintiff") respectfully moves for leave to file a Second Amended Complaint for Violations of the Federal Securities Laws. The redlined version of the SAC showing changes is attached as Exhibit 1, and the proposed Second Amended Complaint ("SAC") is attached as Exhibit 2, to the Declaration of Mathew Andrews.

## PRELIMINARY STATEMENT

This case arises from Defendants' repeated misrepresentations to investors regarding consumer demand for BellRing's Premier Protein products. On October 20, 2026, the Court held that Plaintiff's claims may proceed against Defendants BellRing Brands, Inc. ("BellRing"), former Chief Executive Officer Darcy Horn Davenport ("Davenport"), and Chief Financial Officer Paul Rode ("Rode") (collectively, "Defendants") on the basis of their alleged misstatements about consumer consumption during the period from May 6, 2025 through May 4, 2026 (the "Class Period"). ECF No. 89 ("Opinion") at 22. Specifically, the Court found that Plaintiff adequately alleged that three of Davenport's statements during a May 6, 2025 earnings call – that "there's really no change in consumption"; that Defendants "continue to see strong consumption"; and that there is "absolutely, no softness, no concern around consumption" – were materially false and misleading.[1] *Id.* at 17-19. The Court found that Plaintiff's allegations with respect to these false statements "plead a strong inference of scienter," *id.* at 19-20, and sufficiently allege loss causation. *Id.* at 20-21. On October 26, 2026, the Court further held that the AC adequately alleged that Davenport's

---

1 The Amended Complaint for Violations of the Federal Securities Laws (the "AC") further alleged that Davenport falsely and misleadingly stated during the May 6, 2025 earnings call that BellRing's "consumption remain[s] resilient and strong." AC ¶¶130-131; Plaintiff's Opposition to Defendants' Motion to Dismiss the Amended Class Action Complaint (ECF No. 64) at 2, 18. The Court's reasoning applies equally to this misstatement.

statements during a November 18, 2025 earnings call that "I would actually start with what has not changed" and the "last three quarters are much like every other quarter that we've had, which has strong, strong growth," AC ¶156, were actionable as false or misleading statements.

The [Proposed] SAC alleges that Davenport made additional similarly false and misleading statements concerning consumer consumption in another earnings call during the Class Period. Three months after the May call, on August 5, 2025, Davenport told investors that "Premier Protein's demand and brand fundamentals continue to show exceptional growth and strength," provided misleading statistics purporting to support this claim, and further minimized the effects of competition on consumption that "in a low household penetration category, competition is good," and competition at Costco, BellRing's largest and most important customer, was "great for the category." These statements were materially false and misleading. The Numerator data used by the Court to find the May 6, 2025 and November 18, 2025 statements false and misleading, as well as [redacted], show that Defendants knew, or recklessly disregarded, that at the time of these additional misstatements, multiple demand and brand fundamentals at Premier Protein were far from "exceptional" and indeed were in rapid decline, that the statistics Davenport cited were false or misleading, and that the competition BellRing was facing was the opposite of "good" or "great" for the company.

There is good cause to allow Plaintiff to amend. Plaintiff's request is prompt, following shortly after the Court's issuance of its Opinion and made while discovery is ongoing, and it is narrow, adding no new claims, defendants, or theories of liability. The additional statements set forth in the SAC concern the same subject the Court has already allowed to proceed and are contradicted by data of the type the Court has already considered as well as Defendants' own

contemporaneous internal documents. As such, amendment will not disrupt the case schedule or prejudice Defendants. The motion should be granted.

**RELEVANT PROCEDURAL BACKGROUND**

The initial complaint in this action was filed on January 22, 2026. ECF No. 1. After the Court appointed Indiana Public Retirement System as lead plaintiff on April 10, 2026, Plaintiff filed the AC on May 8, 2026, asserting claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934 on behalf of purchasers of BellRing common stock between August 6, 2024 and May 4, 2026. ECF Nos. 51, 53. Defendants moved to dismiss on June 5, 2026, Plaintiff opposed on June 26, 2026, and Defendants filed their reply on July 10, 2026. ECF Nos. 61, 64, 66. The Court heard argument on Defendants' motion to dismiss on July 16, 2026 and on July 28, 2026 issued a "bottom-line" order denying, in part, Defendants' motion, and sustaining Plaintiff's claims concerning "the level of consumer 'consumption,' i.e., purchases by end users." ECF No. 70.

On August 14, 2026, the Court entered the Civil Case Management Plan, which provided that amended pleadings could be filed without leave of Court until September 11, 2026. ECF No. 75. The plan further provided discovery deadlines, including a requirement that the parties substantially complete document productions by October 22, 2026. *Id.* This deadline was extended at the parties' request during a telephone conference with the Court on October 1, 2026.

On October 20, 2026, the Court issued the Opinion. As relevant here, the Court explained that Davenport's May 6, 2025 statements during an earnings call that "there's really no change in consumption," that Defendants "continue to see strong consumption," and that there is "absolutely no softness, no concern around consumption" were adequately alleged to be false, made with scienter, and causally connected to Plaintiff's losses. Opinion at 17-21. With regard to falsity, the Court found that "defendants possessed data clearly indicating that consumers were increasingly shifting to competitors, that existing consumer purchases were decelerating, and that new consumer

purchases were decelerating," which was "sufficient to warrant a reasonable inference that the above-quoted statements were false or misleading when made." *Id.* at 18. With regard to scienter, the Court found that the "complaint alleges that defendants Davenport and Rode were aware of the data because, as Davenport represented, they reviewed and relied on this data for day-to-day management of the business and because their public statements reference the data." *Id.* at 19-20. With regard to loss causation, the Court found that "the amended complaint alleges that BellRing's share price fell each time defendants revealed that consumption was weaker than defendants had stated" and "[a]t this stage of the litigation, these allegations are sufficient." *Id.* at 21.

On October 26, 2026, the parties convened a call with the Court, during which the Court further held that the AC adequately alleged that Davenport made materially false and misleading statements during BellRing's 4Q 2025 earnings call on November 18, 2025. In particular, Davenport stated to investors, "I would actually start with what has not changed" and the "last three quarters are much like every other quarter that we've had, which has strong, strong growth." AC ¶156. The Court found that the AC adequately alleged these statements for the same reasons as the May 6, 2025 statements — namely, at the time of the statements, Defendants possessed and were aware of Numerator data showing that Premier's key consumption metrics, including category churn, category expansion/contraction, and brand shifting, had plummeted during the last three quarters. AC ¶¶69-77, 159. The Court granted Plaintiff permission to move to file an amended complaint with additional statements concerning consumer consumption by November 9, 2026. Defendants must file any opposition to this motion by November 23, 2026. The parties are required to be trial ready by March 3, 2027.

**THE SAC**

The SAC differs from the current operative complaint in two respects. First, it conforms the pleading to reflect the Court's rulings in its Opinion on Defendants' motion to dismiss, removing,

for example, the claims against Robert V. Vitale ("Vitale"). Second, it alleges a limited number of additional particularized facts demonstrating that Defendants made additional materially false and misleading statements concerning consumption of BellRing's products during an August 5, 2025 earnings call, roughly three months after they falsely assured investors "there's really no change in consumption"; that they "continue to see strong consumption"; and that there is "absolutely no softness, no concern around consumption." SAC ¶¶90-116. During the August 5, 2025 call, Davenport told investors that "Premier Protein's demand and brand fundamentals continue to show exceptional growth and strength," stating in pertinent part:

> My second message, Premier Protein's demand and brand fundamentals continue to show exceptional growth and strength. Premier Protein, with RTD market share of 25% is the number 1 brand in RTD segment as well as the number 1 brand in the broader convenient nutrition category. Our consumption grew 19% in Q3. Volume gains drove approximately 60% of this growth. The brand had an all-time high in household penetration and remains the leader in the RTD category, reaching 21.6% of consumers. Most encouragingly is that our loyalty and buy rate have remained strong, among the highest in the category. Retailers look to us for thought leadership and as a proven brand. We are the number 1 velocity brand with the overwhelming majority of our products in the top third of the category. Our brand continues to win incremental shelf space with Premier Protein shake TDPs up 34%.

SAC ¶98. Davenport also minimized the harm of additional competition on consumption at Premier Protein stating, "in a low household penetration category, competition is good," and competition at Costco was "great for the category" because "[w]hen I was walking around I bet you 60% to 70% of the parts in the store had high protein shakes in the cart, which – and people – it's completely mainstreamed." *Id.* at ¶99.

Davenport's statement that "Premier Protein's demand and brand fundamentals continue to show exceptional growth and strength"; the statistics she provided for market share, consumption, volume gains, household penetration, loyalty, and velocity; and her statements minimizing the harm of additional competition on consumption of BellRing's products were materially false and misleading. As explained in the SAC and detailed below, at the time of the statements, Defendants

knew, or recklessly disregarded, that multiple demand and brand fundamentals at Premier Protein were declining. Among other things, Defendants knew, or recklessly disregarded, that contemporaneous Numerator data showed that the principal drivers of Premier Protein consumption — brand shifting, category expansion/contraction, and category churn — had deteriorated in each successive quarter of 2025, including the quarter she was describing; and that consumption of Premier Protein's core products at Costco, BellRing's "key club retailer," [redacted]

**APPLICABLE LEGAL STANDARDS**

A party seeking to amend a pleading after the deadline for doing so in a scheduling order must satisfy Rule 16(b)(4)'s "good cause" standard. Fed. R. Civ. P. 16(b)(4). The inquiry "depends on the diligence of the moving party," *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000), and "require[s] movants to demonstrate that circumstances outside of their control prevented them from timely seeking relief and that they diligently sought relief within a reasonable period." *N.Y. v. Trump*, 158 F.4th 458, 466 (2d Cir. 2025); *see also Sjunde AP-Fonden v. G.E.*, 341 F.R.D. 542, 550 (S.D.N.Y. 2022) ("[w]hether good cause exists turns on the diligence of the moving party"). When a request for amendment is based on information acquired in discovery, diligence may be shown by seeking leave to amend within months of receiving the discovery. *See, e.g.*, *Ambac Assurance Corp. v. EMC Mortg. Corp.*, 2010 WL 11595698, at *6-*7 (S.D.N.Y. Dec. 16,

2010). A court has broad discretion to modify deadlines to ensure they "do not result in prejudice or hardship to either side." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

Rule 15(a)(2) provides that a court "should freely give leave [to amend a pleading] when justice so requires." Accordingly, the Second Circuit "has held that a Rule 15(a) motion should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603 (2d Cir. 2005) (per curiam) (internal quotation marks omitted). The party opposing amendment bears the burden of demonstrating that leave should be denied. *See Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).

**ARGUMENT**

**I. There Is Good Cause to Grant Plaintiff's Motion**

Throughout the course of this litigation, Plaintiff has diligently pursued its claims and there is no evidence that Plaintiff's application to amend its pleadings is made in bad faith. Less than a week after receiving the Court's October 20 Order, which clarified the scope of this case and the actionable statements in the AC, Plaintiff alerted the Court and Defendants of its intent to file this motion. The SAC narrows, rather than expands, the case. It drops the claims against Vitale, abandons the theories the Court dismissed, and adds limited allegations concerning additional misstatements during the relevant period on the same topic the Court allowed to proceed.

Moreover, evidence establishing the falsity of the additional misstatements alleged in the SAC as well as the Defendants' scienter consists in significant part of Defendants' internal documents – emails and attachments – that were only recently received by Plaintiff as part of voluminous discovery productions. Plaintiff promptly reviewed those materials upon receipt and incorporated them into the SAC. Courts consistently grant leave to amend to allow a plaintiff to replead a claim relying on evidence revealed in discovery. *See Sjunde*, 341 F.R.D. at 551; *see also*

*In re Bankr. Est. of Norske Skogindustrier ASA*, 2023 WL 3312388, at *4 (S.D.N.Y. May 8, 2023) ("[The proposed a]llegations merely conform the pleadings to evidence obtained in discovery, which courts routinely find to be a proper basis for an amendment.").

## II. The Requested Amendment Would Result in No Undue Prejudice

The filing of the SAC would result in negligible, if any, prejudice to Defendants. The SAC adds no new counts, parties, or theories of liability. Instead, the additional allegations are limited to additional examples of materially false and misleading statements made by the Defendants concerning consumer demand (consumption), a subject Defendants have been aware of since this case began and have known would remain in this case since at least the Court's "bottom-line" order. The new allegations are supported by Defendants' own internal documents and the SAC is being filed before class certification is decided, before summary judgment litigation, and well before trial. Indeed, discovery remains ongoing – Defendants produced approximately 20,000 documents on October 22, additional documents on October 29, and have yet to produce, among other things, text messages for multiple key custodians, including Davenport and Rode. Accordingly, granting Plaintiff's motion to amend would not require Defendants to "expend significant additional resources to conduct discovery" or "significantly delay the resolution of the dispute." *See Block*, 988 F.2d at 350.

## III. Amendment Would Not Be Futile

The SAC removes allegations found insufficient by the Court and adds a limited number of allegations concerning the same subject matter the Court has already found actionable — the state of consumer demand for BellRing's products. SAC ¶¶98-116. These additional statements are contradicted by the same data the Court has already found sufficient at the pleading stage, and additionally by Defendants' own internal communications among Davenport, Rode, and others discussing [redacted]. The SAC responds to

and is attuned to the Court's prior rulings and would "withstand a motion to dismiss." *See Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).").

### A. Davenport's Statements During the August 5, 2025 Call Were Materially False and Misleading

Once a company "speaks on an issue or topic," it assumes "a duty to be both accurate and complete" and to "tell the whole truth." *Gimpel v. The Hain Celestial Grp., Inc.*, 156 F.4th 121, 139, 139-41 (2d Cir. 2025) (internal quotation marks omitted). By "putting the reasons for the company's success at issue, but failing to disclose a material source of its success," a speaker renders the speaker's statements materially misleading. *Id.* at 141 (quotation and alteration omitted); *see also Sills v. United Nat. Foods, Inc.*, 2024 WL 4188324, at *8 (S.D.N.Y. Sep. 13, 2024) (company "put the drivers of its margins in play by speaking on the issue" but "failed to disclose that forward buying was a significant and aberrational driver of its profit margins"). During her remarks on the August 5, 2025 call, Davenport chose to speak on consumption, telling investors that "Premier Protein's demand and brand fundamentals continue to show exceptional growth and strength"; providing statistics for market share, consumption, volume gains, household penetration, loyalty, and velocity; and stating, "in a low household penetration category, competition is good," and competition at Costco was "great for the category." SAC ¶¶98-99. These statements and statistics were materially false and misleading when made.[2]

---

[2] As with the actionable May 6, 2025 and November 18, 2025 statements, the August 5, 2025 false statements in the SAC are not puffery. Davenport's claim of "exceptional growth and strength" was presented as a factual "message" about current "demand and brand fundamentals." SAC ¶98. And she made it while in possession of internal documents [redacted]. ¶¶102-115. Similarly, Davenport's assurances that "in a low household penetration category, competition is good" and that competition at Costco was "great for the category" were made after BellRing's employees had repeatedly told her that [redacted]

First, contemporaneous Numerator data in Defendants' possession, which the Court has already credited, showed that demand for Premier Protein was weakening, not showing "exceptional growth and strength." The Court held that such data showing that key consumption metrics were deteriorating in the first and second quarters of 2025 were sufficient to warrant a reasonable inference that Davenport's statements on May 6, 2025 – that "there's really no change in consumption"; that defendants "continue to see strong consumption"; and that there is "absolutely no softness, no concern around consumption" – were false or misleading when made. Opinion at 18. The Court has also held that this same consumption data was sufficient to show that Davenport's statements on November 18, 2025 that the "last three quarters are much like every other quarter that we've had, which has strong, strong growth" were also materially false and misleading.

Davenport's statements in between these two earnings calls – on August 5, 2025 – are no different. By August 5, 2025, the Defendants possessed data clearly indicating that declines had been *accelerating* since the prior earnings call in May 2025. Across all channels, brand-shifting losses accelerated from 1.9% in 1Q 2025 to 2.3% in 2Q 2025 to 4.0% in 3Q 2025; existing-customer purchase growth collapsed from 11.9% in 1Q 2025 to 7.3% in 2Q 2025 to 1.6% in 3Q 2025; and new-customer purchase growth slowed from 22.4% in 1Q 2025 to 16.6% in 2Q 2025 to 15.9% in 3Q 2025. SAC ¶102. The deterioration was even starker in BellRing's core club channel, where brand-shifting losses accelerated from 1.2% to 2.8% to 4.9%, and existing-customer purchase growth fell

---

[redacted]. ¶¶99-115. Like the May 6, 2025 and November 18, 2025 misstatements, these are "retrospective" statements focused "on how the events of the previous quarter affected [BellRing's] financial health," *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 173 (S.D.N.Y. 2021); *In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889, at *12 (S.D.N.Y. Nov. 26, 2018), that were made "in an effort to reassure the investing public about the [Company's integrity]." *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 381 (S.D.N.Y. 2015); *see also Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000) (statement that inventory situation was "in good shape" or "under control" not puffery where defendants allegedly knew the contrary was true) (internal quotation marks omitted).

from 11.9% to 8.5% to just 0.2% in 3Q 2025. *Id.* Thus, during the very quarter she described, Premier Protein was losing an accelerating share of volume to competitors, existing customers had nearly stopped increasing their purchases, and new-customer growth continued to slow. *Id.* The Court has found that such data made false Davenport's claims of "no change in consumption," "strong consumption," and "absolutely no softness, no concern around consumption" in May 2025. By August 2025, the data was even worse. Davenport nonetheless represented to investors that BellRing's "demand and brand fundamentals continue to show exceptional growth and strength."

Second, Defendants' internal documents reflect that in the months preceding the August 5, 2025 call [redacted]. SAC ¶¶104-115. Costco constituted 31.3% of all of BellRing's sales, ¶¶41, 104, and Davenport herself referred to Costco as the company's "key club retailer" during the August 5 earnings call. ¶104. Davenport nonetheless made materially false and misleading claims that "Premier Protein's demand and brand fundamentals continue to show exceptional growth and strength." ¶98. The documents further reflect that the statistics presented by Davenport were misleading because [redacted]"[3] ¶¶104-115. For example:

- [redacted]

[3] [redacted] *Id.*

[redacted] ¶¶105-106.

- [redacted] ¶107.
- [redacted] ¶109.
- [redacted]
- [redacted]

---

4 [redacted]

5 [redacted]

- [redacted]

These internal documents reveal that Davenport knew or recklessly disregarded that her statements during the August 5, 2025 call that "Premier Protein's demand and brand fundamentals continue to show exceptional growth and strength" were materially false and misleading when she made them. In sum, the documents show, among other things, Davenport knew by August 5, 2025 the following about Costco, BellRing's "key club retailer" and largest customer accounting for 31.3% of all of BellRing's sales:

a. [redacted]

b. [redacted]

c. [redacted]

d. [redacted]

Moreover, Davenport cited materially false and misleading market share, consumption, volume gains, household penetration, loyalty, and velocity statistics during the August 5, 2025 earnings call. The internal communications amongst Davenport, Rode, and other BellRing employees show [redacted] ¶¶105-114. Nevertheless, Davenport affirmatively stated during the August 2025 earnings call, "[v]olume gains drove approximately 60% of this growth," and described the effects of pricing on Q3 consumption as "slight" and "minor." ¶114 n.17. Moreover, while Rode stated during the August 2025 earnings call that promotions were one of the "main drivers of volume growth," he omitted [redacted]"[6] *Id. See, e.g.*, *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 137 (2d Cir. 2021) (defendants' "statements attributing [] high sales volume to strong consumer demand, while omitting to state that increased competition had weakened consumer demand" and that high sales volume was achieved through unsustainable incentives were actionable under Rule 10b-5(b)); *see also Gimpel*, 156 F.4th at 138 ("[I]nvestors would want to know that revenue is not being driven by increased demand but by sales tactics that will likely prove

---

[6] Davenport likewise failed to disclose that Premier Protein's "demand and brand fundamentals" were declining at Costco for multiple quarters during her discussion of so-called tariff pallets during the 3Q 2025 earnings call. Davenport described such pallets as "unique" and "temporary" and did not reveal the widespread growth in competition since November 2024: "[W]hen we gained our short-term club palette, several other competitors also gain some space . . . . this is sort of a unique situation where the competition is, especially in that channel is kind of increasing for a short period of time because of this unique situation and then will come down a little bit." Davenport further added that the effects of additional pallets were minor and net neutral, stating, "[W]hen we got that short-term club pallet, several other competitors also gained short-term space. And so we're assuming that this increases the competitive pressures and reverses the two gains that I talked about. Now, these are small pieces. These are minor. These are -- we're all talking about 2% up, 2% down."

unsustainable[.]"); *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 33-34 (S.D.N.Y. 2019) (results "driven by inflated channel inventory and not increased end-user demand" are material "because those forces fundamentally differ in sustainability," and a "general disclosure of a phenomenon's existence, without describing its outsize rate of occurrence," does not cure the misstatement).

Davenport further made materially false and misleading statements minimizing the harm of the additional competition described above. While Davenport generally noted during the August 2025 earnings call "the inevitability of increased competition," increases in "some competitive pressure in club," and "new protein RTDs enter[ing] the category, especially in [BellRing's] biggest channel, club," Davenport falsely minimized the effects of competition by stating, among other things, "in a low household penetration category, competition is good," and competition at Costco was "great for the category" because "[w]hen I was walking around I bet you 60% to 70% of the parts in the store had high protein shakes in the cart, which -- and people – it's completely mainstreamed." As set forth in ¶¶104-115, however, BellRing employees repeatedly told Davenport that [redacted]

Lastly, there is no merit to any truth-on-the-market defense. As the Court has recognized, "a 'truth-on-the-market defense' is generally an inappropriate basis for dismissal on the pleadings." Opinion at 19 (quotation omitted). The defense is "intensely fact-specific," and "the 'corrective information must be conveyed to the public with a degree of intensity and credibility sufficient to counter-balance effectively any misleading information created by the alleged misstatements.'" *Gimpel*, 156 F.4th at 142 (quoting *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 (2d Cir. 2000)). Nothing of that sort happened here. The additional allegations in the SAC rely substantially on

internal BellRing documents that were not available to the market. Defendants repeatedly and unequivocally told investors that consumption was not declining. Given these "rigorous" denials, "[i]t cannot be said, as a matter of law, that the information available to investors concerning the problems . . . was sufficient to overcome [Defendants'] representations[.]"[7] *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 2005 WL 2148919, at *12 (S.D.N.Y. Sep. 6, 2005). Indeed, BellRing's stock fell each time it partially disclosed the truth about consumption and promotions — proving the data were not publicly known. ¶¶138-161; *Ganino*, 228 F.3d at 167 (price drop refutes truth on the market).

### B. The SAC Adequately Pleads Scienter and Loss Causation for the New Statements

In rejecting Defendant's challenge to the May 6, 2025 statements, the Court found that the allegations in the AC "plead a strong inference of scienter." Opinion at 20. A strong inference need only be "cogent and at least as compelling as any opposing inference," and "need not be irrefutable, of the smoking-gun genre, or even the most plausible of competing inferences." *Gimpel*, 156 F.4th at 143-44 (internal quotation marks omitted). That inference of scienter is even stronger with respect to the new allegations of the SAC, which, as set forth above, are supported both by the same Numerator data already considered by the Court as well as numerous additional internal BellRing communications involving Davenport and Rode. The additional allegations cite specific internal reports describing [redacted]

---

7 *See In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 288 (S.D.N.Y. 2006) (denying defense where "authoritative statements from defendants, assuring the market" plausibly offset news disclosing the truth); *Puddu v. 6D Glob. Techs., Inc.*, 2021 WL 1198566, at *7 (S.D.N.Y. Mar. 30, 2021) (denying defense where defendant's "representations plausibly distorted the information available on the market, despite the existence of the [corrective] news articles on which [defendant] relies").

[redacted] These are precisely the types of specific reports the Second Circuit has found sufficient. *See Novak*, 216 F.3d at 308-09, 311 (recklessness adequately pleaded where defendants "knew facts or had access to information suggesting that their public statements were not accurate"); *Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 196 (2d Cir. 2008).

The SAC adequately alleges loss causation as to the August 5 statements. Plaintiff need only plead facts giving Defendants "some indication" of the actual loss and a plausible causal link to the misstatements. *Stary v. Teladoc Health, Inc.*, 2026 WL 878939, at *16 (S.D.N.Y. Mar. 31, 2026). As with the May 6 and November 18 statements, the August 5, 2025 statements kept the price of BellRing stock inflated, and the stock price thereafter fell each time Defendants revealed that consumption was weaker than Defendants had stated, including when BellRing disclosed a "more competitive environment" in November 2025 (a 12% decline), disclosed the discontinuance of promotions in February 2026 (a 14% decline), and admitted in May 2026 that "around 40 new competitors" had entered the market over the last 18 months with "tremendous" effect (a 39% decline). As the Court has already found concerning Davenport's other actionable statements concerning consumption in the AC, such allegations suffice at the pleading stage. Opinion at 21.

### C. The New Statements Are Not Protected by the PSLRA Safe Harbor

The additional August 5, 2025 statements describe the present and continuing state of Premier's "demand and brand fundamentals" (they "continue to show exceptional growth and strength") and the present effect of competition (it "is good" and "great for the category"). SAC

¶¶98-99. Statements of present fact fall outside the safe harbor. *See In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 245-46 (2d Cir. 2016). In any event, the safe harbor does not protect a statement made with actual knowledge of its falsity, and the internal reports sent to Davenport supply that knowledge. SAC ¶¶104-115; 15 U.S.C. §78u-5(c)(1)(B).

DATED: November 9, 2026

ROBBINS GELLER RUDMAN
& DOWD LLP
MATHEW ANDREWS
CHRISTOPHER GILROY
CRISTELLE RABBAN

*/s/ Mathew Andrews*
MATHEW ANDREWS

420 Lexington Avenue, Suite 1832
New York, NY 10170
Telephone: 212/432-5100
mandrews@rgrdlaw.com
cgilroy@rgrdlaw.com
crabban@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
EVAN J. KAUFMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
ekaufman@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
LUKE O. BROOKS (admitted *pro hac vice*)
KEVIN A. LAVELLE (admitted *pro hac vice*)
T. ALEX B. FOLKERTH (admitted *pro hac vice*)
KEVIN S. SCIARANI (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
lukeb@rgrdlaw.com
klavelle@rgrdlaw.com
afolkerth@rgrdlaw.com
ksciarani@rgrdlaw.com

*Lead Counsel for Lead Plaintiff*

**LOCAL RULE 7.1(C) CERTIFICATE**

Pursuant to Local Rule 7.1(c), the undersigned counsel certifies that the foregoing brief was prepared on a computer using Microsoft Word. The total number of words in the brief, inclusive of point headings and footnotes and exclusive of the caption, table of contents, table of authorities, signature block, and this Certification, is 6,190 words. By operation of Microsoft Word's word count function, this number includes legal citations, numerical information, and certain forms of punctuation.

*/s/ Mathew Andrews*
MATHEW ANDREWS